703 So.2d 63 (1997)
STATE of Louisiana
v.
Gene WINFREY.
No. 97-KA-427.
Court of Appeal of Louisiana, Fifth Circuit.
October 28, 1997.
*66 Linda Davis-Short, Louisiana Appellate Project, Gretna, for Appellant Gene Winfrey.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Assistant District Attorney, Research and Appeals, Gretna, for Appellee State.
Before GOTHARD, CANNELLA and DALEY, JJ.
CANNELLA, Judge.
Defendant, Gene Winfrey, appeals his conviction of armed robbery, his conviction as a second felony offender and his sentence. We affirm the conviction and remand.
On February 10, 1995, the Jefferson Parish District Attorney filed a bill of information charging defendant with armed robbery, a violation of La.R.S. 14:64. Defendant was arraigned on February 15, 1995, and pled not guilty. On June 16, 1995, the trial court denied defendant's motion to suppress identification as well as defendant's oral motion for a continuance.[1] On June 22, 1995, the trial court denied defendant's written motion for a continuance.
Trial was held on June 23, 1995, after which a jury returned a unanimous verdict of guilty, as charged. On July 7, 1995, the trial court denied defendant's motion for a new trial and the state filed a habitual offender bill alleging that defendant was a second felony offender.
On July 17, 1995, defendant was sentenced to serve fifty (50) years at hard labor without benefit of probation, parole or suspension of sentence. On the same day, the defendant filed a motion to reconsider sentence and a motion for appeal. The motion to reconsider was denied.
The habitual offender hearing was held on January 5, 1996. The trial court adjudicated defendant to be a second felony offender, set aside defendant's original sentence, and sentenced defendant to serve one hundred years at hard labor without benefit of probation, parole or suspension of sentence.
On January 9, 1996, defendant filed a motion to reconsider sentence. The trial court conducted an extensive hearing on the motion to reconsider sentence on February 3, 1997 and took the matter under advisement. The record does not reflect a ruling on this motion. It is noted that no additional motion for appeal was filed.

FACTS
On January 29, 1995, Samantha LeBouef (LeBouef) was bartending at Jeanne's Tavern on Fourth Street and Fifth Avenue in Jefferson Parish, Louisiana. At about 8:00 *67 p.m., while she and two customers were watching the Super Bowl on television, LeBouef twice saw a car drive slowly past the bar. She resumed watching the game. Shortly thereafter, a man put a gun to her head and said, "Give me the money." While LeBouef removed the money from the cash register, the man pointed the gun at the two customers in the bar and said, "Don't move if you want to live."
After the robbery, LeBouef called 911. Deputy Robert Melancon of the Jefferson Parish Sheriff's Office responded to the call. LeBouef gave a description of the robber and his vehicle to the deputy who broadcast it over the police radio. A short while later, Deputy Manix of the Jefferson Parish Sheriff's Office stated over the radio that he was following a vehicle matching the robber's description. Less than an hour later, defendant was stopped by Jefferson Parish deputies at a red light at Stumpf Boulevard and the Westbank Expressway. Deputy Melancon brought LeBouef and Kerry Creason (Creason), who was present in the bar that night, to the location where the vehicle had been stopped. Defendant was in the back seat of another police car and an officer shined a light into that car. LeBouef looked into the back seat of the police car and identified defendant as the person who had robbed her. An officer showed her a ski mask that was found on the front seat of the car which defendant was driving. She identified the mask as the one that the robber was wearing. Additionally, both she and Creason stated that the car that the officers had stopped was the same car that had driven past the bar prior to the robbery. The investigating officers also recovered a gun from under the driver's seat of the vehicle that defendant was driving. Additionally, $65 was recovered from defendant's coat pocket. LeBouef had originally reported that $120 was missing from the cash register. However, she stated at trial that she did not know exactly how much money was in the register.
At trial, LeBouef identified defendant as the person who had robbed her on January 29, 1995. She stated that she had looked directly into his eyes during the robbery. She also identified the car involved from photographs, the ski mask and clothing worn by defendant on the night of the robbery and the gun used by defendant to commit the robbery.
Cynthia Winfrey, defendant's former spouse, testified on his behalf. She stated that defendant called her at approximately 7:30 to 7:45 p.m. on the evening of the robbery and asked her to go to the skating rink with him that night, but she further stated that she did not go because she was tired. Additionally, she stated that the car in the photographs, state's exhibits one through three, belonged to "Ivory", defendant's roommate. Cynthia Winfrey testified that Ivory let defendant use the car from time to time.
After hearing all of the testimony and considering the evidence introduced at trial, the jury returned a verdict of guilty as charged.
On appeal, defendant asserts 13 assignments of error:
1. The trial court erred in denying defendant's motion to continue.
2. The trial court erred in denying defendant's motion to suppress identification.
3. The trial court erred in allowing the prosecutor to introduce defendant's clothing into evidence which were not shown to the defense prior to trial.
4. The trial court erred in denying the defendant's motion for a mistrial based on a violation of the sequestration order.
5. The trial court erred in denying the defense motion for a mistrial based on improper comments by the prosecutor during closing argument.
6. The trial court erred in allowing Sgt. Vierra to testify about the pellets recovered from the gun.
7. The trial court erred in refusing to allow defendant to present his defense.
8. The trial court erred in denying defendant's motion for a new trial.
9. The trial court erred in allowing the prosecutor to go beyond the scope of cross-examination in redirect.

*68 10. The trial court erred in finding that defendant was a multiple offender.
11. The trial court erred in imposing an excessive sentence.
12. The trial court erred in failing to advise defendant of the prescriptive period for post conviction relief.
13. Assigned as error are any and all errors patent on the face of the record.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant first contends that the trial court erred in denying defendant's motion to continue. He argues that he was denied a fair trial because of the trial court's refusal to grant a continuance.
The week before trial, defendant made two motions to continue the trial. Defendant made an oral motion to continue the trial on June 16, 1995 and filed a written motion to continue on June 22, 1995. Defendant contends that because his trial counsel had less than two weeks to prepare for trial, his counsel did not have the opportunity to meet with potential witnesses, to confer with defendant in any meaningful way, and did not have the opportunity to test such evidence as the ski mask, the gun, and the money.
A motion for a continuance must be made in writing and allege the specific grounds upon which it is based. La.C.Cr.P. art. 707. As a general rule, a motion for a continuance must be made within seven days prior to trial. Id. Nevertheless, in the interests of justice, the trial court may grant a continuance upon written motion at any time after a contradictory hearing.
On June 16, 1995, six days prior to trial, defendant made an oral motion for a continuance, which the trial court denied. The denial of an oral motion for continuance leaves nothing for the appellate court to review. State v. Malinda, 95-292 (La.App. 5th Cir. 10/31/95), 663 So.2d 882, 886. Nevertheless, when circumstances producing the motion for continuance occur unexpectedly and there is no opportunity to prepare a written motion, there is a jurisprudential exception to the requirement for a written motion. State v. Malinda, 663 So.2d at 886.
In this case there are no unexpected circumstances that prevented defendant from filing a written motion. Defense counsel was appointed to represent defendant on May 19, 1995, approximately twenty-nine days prior to the date on which he orally requested the continuance. Defense counsel had sufficient opportunity to prepare a written motion for continuance. Therefore, we find that the denial of the June 16, 1995 motion for continuance has not been preserved for review on appeal.
On June 22, 1995, the day that the jury was empaneled, defendant filed a written motion for a continuance. The trial court denied the motion on the same day.
A timely motion for continuance may be granted by the trial court in its discretion for any good cause. La.C.Cr.P. art. 712. The trial court's denial of a motion for continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice. State v. Wilson, 96-251 (La.App. 5th Cir. 10/1/96), 683 So.2d 775, 776. This requirement will only be disregarded when the time allowed defense counsel to prepare is so minimal that the fairness of the proceedings is questionable. The reasonableness of the discretion issue turns on the circumstances of the particular case. State v. Malinda, 663 So.2d at 886.
The record reflects that defendant was represented by the Indigent Defender Board (IDB) and defendant's trial counsel was appointed on May 19, 1995. By the time the case was tried on June 22, 1995, the defendant's counsel had been assigned to the case for more than a month. Additionally, defendant's prior IDB counsel had filed several pretrial motions for discovery and defendant's trial counsel was not given an empty file.
Because the motion was not filed at least seven days prior to trial as required by La.C.Cr.P. art. 707, defendant's motion was untimely on it's face. The record does not reflect whether the trial judge denied the motion because it was untimely or because *69 the interests of justice did not require the trial to be continued. Regardless, we find that defense counsel had sufficient time to prepare for trial and that the time involved does not make the fairness of the proceedings questionable.
Defendant further contends that he could have tested evidence and interviewed and subpoenaed witnesses favorable to his case if his counsel had been given more time to prepare. He also claims that his counsel was preparing for two other trials and did not have time to adequately prepare for his trial.[2]
The record does not support this contention. As noted above, defendant's counsel was assigned to this case more than a month before trial. Defense counsel had ample time to conduct tests and to interview the witnesses that he deemed necessary. Furthermore, at trial, defendant's counsel cross-examined the state's witnesses and presented a defense on his behalf. Thus, we find that defendant has failed to show any specific prejudice resulting from the trial court's denial of his motions for continuance.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant next contends that the trial court erred in denying his motion to suppress the identification because the face-to-face identifications made by witnesses were suggestive.[3]
A defendant challenging an identification procedure must prove that the identification was suggestive. La.C.Cr.P. art. 703(D); State v. Nguyen, 95-1055 (La.App. 5th Cir. 2/26/96), 672 So.2d 988, 992, writ denied, 96-1019 (La. 10/4/96), 679 So.2d 1377 and 96-2087 (La. 10/7/96), 680 So.2d 639. Even if an identification procedure is suggestive, it is the likelihood of misidentification, not the mere existence of suggestiveness, which violates due process. State v. Culpepper, 434 So.2d 76, 78 (La.App. 5th Cir.1982).
As a general rule, one-on-one identifications are not favored. However, under certain circumstances, these identifications are permissible. State v. Jackson, 96-661 (La.App. 5th Cir. 4/9/97), 694 So.2d 440, 447. This is particularly true when the one-on-one identification is closely associated in time with the commission of the crime and where the suspect is returned to the location of the crime for immediate identification. State v. Robinson, 404 So.2d 907, 909 (La.1981). Such identifications promote fairness by assuring reliability and the prompt release of innocent suspects. State v. Robinson, supra.
The factors to be considered in assessing reliability include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty displayed at the confrontation and the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); State v. Watson, 477 So.2d 788, 791 (La.App. 5th Cir. 1985). Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Manson v. Brathwaite, 432 U.S. at 114, 97 S.Ct. at 2253; State v. Watson, 477 So.2d at 791.
*70 In evaluating a challenge to an identification procedure, courts must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. at 113, 97 S.Ct. at 2252; State v. Meyers, 95-750 (La.App. 5th Cir. 11/26/96), 683 So.2d 1378, 1386, writ denied by State v. Delmore, 97-0015 (La. 5/9/97), 693 So.2d 766.
Defendant argues that the identification procedure in his case was suggestive because he was alone in the backseat of a police car and in handcuffs at the time he was identified by LeBouef and Creason. Defendant contends that there was a substantial likelihood of misidentification because the witnesses could not have seen the robber's face since the perpetrator wore a ski mask.
Approximately thirty to forty-five minutes after the robbery, a police officer took Creason and LeBouef to the location where defendant had been stopped. At the suppression hearing, LeBouef testified that she identified defendant as the man who robbed her as soon as she saw him the back of the police car. She further stated that none of the police officers on the scene suggested to her that defendant was the robber. Applying the Manson v. Brathwaite factors, even if the identification was suggestive, the identification did not present a substantial likelihood of misidentification. LeBouef had ample opportunity to view defendant at the crime scene. Her prior description of defendant and his car were accurate. The time between the robbery and confrontation was short. Furthermore, she positively identified defendant as the robber at the scene. After our review, we find that the identification was not suggestive nor was a substantial likelihood of misidentification. Therefore, we find that the trial court did not err in denying defendant's motion to suppress the identification.

ASSIGNMENT OF ERROR NUMBER THREE
In his third assignment of error, defendant asserts that the trial court erred in allowing the prosecutor to introduce defendant's clothing into evidence because they were not shown to the defense prior to trial.
Defendant argues that the trial court improperly admitted his clothing into evidence since the state did not produce the clothing for defendant to examine or test prior to trial. At trial, LeBouef identified items of clothing as those worn by defendant on the night of the robbery. The clothing was received into evidence over defendant's objection. Defendant argues that the ruling was erroneous because La.C.Cr.P. art. 718 required the state to disclose the clothing prior to trial. He argues that he was prejudiced because he wanted to conduct testing on the clothing prior to trial.
La.C.Cr.P. art. 718 provides that defendant must make a motion to examine or test tangible objects before the state is required to provide an opportunity to defendant to do so prior to trial. C.Cr.P. art. 718 provides as follows:
Subject to the limitation of Article 723[4], on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photography, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection. [Footnote added.]
In this case, defendant filed motions for discovery on February 16, 1995 and on June 22, 1995. However, he did not file a motion under La.C.Cr.P. art. 718 requesting an opportunity *71 to examine or test the clothing.[5] In addition, the discovery motions do not contain a generic request for the state to disclose objects it intended to use as evidence at trial or objects obtained from or belonging to defendant. Thus, defendant was not entitled to examine or test the clothing prior to trial.
In addition, defendant has not shown that he was prejudiced by the trial court's ruling. Error may not be predicated upon a ruling that admits certain evidence, unless a substantial right of the party is affected and a timely objection or motion to admonish the jury to limit or disregard the evidence appears of record, stating the specific grounds of objection. La. C.E. art. 103 A(1); State v. Jones, 588 So.2d 805, 808 (La.App. 2nd Cir.1991). Additionally, C.Cr.P. art. 921 provides that "[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." "Appellate courts should not reverse convictions for errors unless the accused's substantial rights have been violated." State v. Schexnayder, 96-98 (La.App. 5th Cir. 11/26/96), 685 So.2d 357, 369, writ denied, 97-0067 (La. 5/16/97), 693 So.2d 796.
In this case, defendant has not shown that a prior examination would have produced exculpatory evidence. Defendant was identified by LeBouef shortly after the incident, wearing the identical type and color of clothing which she said he was wearing. He was in a car matching the description given by the witnesses, who had ample opportunity to observe the perpetrators' vehicle before the robbery. Since defendant was not entitled to examine or test the clothing prior to trial and he has shown no prejudice sufficient to require a reversal on this point, we find no error in the trial judge's ruling.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant next argues that the trial court erred in denying the defendant's motion for a mistrial based on a violation of the sequestration order.
A mistrial is a drastic remedy and is within the discretion of the trial court, unless mandatory under La.C.Cr.P. art. 770. It is only warranted if substantial prejudice results which would deprive the defendant of a fair trial. State v. Narcisse, 426 So.2d 118, 133 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
In this case, defendant argues that state witnesses violated the sequestration order while awaiting their turn to testify. Specifically, defendant claims that Cynthia Winfrey overheard police officers discussing trial testimony with "the lady with the green shirt on (LeBouef)." Thereafter, defendant moved for a mistrial. After hearing the testimony, out of the presence of the jury, the trial court denied defendant's motion.
The record reflects that at the beginning of the trial, the trial judge ordered the witnesses to remain outside the courtroom until called, but failed to instruct them not to discuss the case. Defendant did not object to the order. He complained later when defendant's sole witness, Cynthia Winfrey overheard a discussion between a lady she identified as LeBouef and police officers. Defendant admits that the trial judge did not give an order to refrain from speaking about the case to the witnesses, but claims that the police officers are well aware they are not supposed to talk to witnesses while sequestered.
La.C.Cr.P. art. 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." State v. Soler, 93-1042 (La.App. 5th Cir. 4/26/94), 636 So.2d 1069, 1074, writ denied, 94-0475 (La. 4/4/94), 637 So.2d 450, and 94-1361 (La. 11/4/94), 644 So.2d 1055.
Defendant failed to object to the sequestration order and cannot complain on appeal that the trial judge erred in his instruction. However, he argues that despite the instruction that was given, the police officers should *72 have known better than to speak to a witness while sequestered. Although not stated, defendant apparently believes that the conversation unfairly influenced LeBouef's testimony.
Cynthia Winfrey testified, relative to the motion for mistrial, that she overheard state witnesses talking about testimony. She said that she heard the "lady in the green blouse" (LeBouef) talking with police officers. Specifically, she testified as follows:
(MR. SOMOZA, defense counsel):
Q: Would you please tell the Court what you overheard and what you saw? (MS. WINFREY, witness):
A: The officers came out, they were sitting with the lady with the green shirt on.
Q: And that would beexcuse me, go ahead.
A: And they was telling her what to say. She was telling them what happened, and what was her testimony. He asked her, well, what did they say. She said that there is no damn evidence. So, they went to talking some more. And they carried on, and they carried on.
BY MR. SOMOZA:
Q: What did you overhear her [the lady in the green shirt] say?
(MS. WINFREY):
A: They [the officers] asked her what happened, and she said, "He is a fucking asshole." And he asked her what happened. She said, "Well, there is no damn evidence. It is justI am supposed to be going home, and he told me no, I can't go home because he's going to call me back." It's just a whole lot of, you knowto me, I figured they don't suppose to discuss the testimony.[6]
The testimony indicates that LeBouef and the officers were discussing the case. Cynthia Winfrey states at the beginning of the testimony that "They were telling her what to say ..." however, when asked to elaborate, she was unable to do so. Thus, defendant has failed to show his suffered any prejudice from the conversation. Even had the trial judge ordered the witnesses to refrain from speaking about the case while sequestered, the mere fact that state witnesses speak to other witnesses does not establish a violation of a sequestration order and does not show possible prejudice. State v. Strickland, 94-0025 (La. 11/1/96), 683 So.2d 218, 236. Thus, we find that the trial judge did not err in denying the motion for mistrial.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant asserts that the trial court erred in denying his motion for a mistrial based on improper comments by the prosecutor during closing argument. Defendant contends that the trial court's refusal to grant his three motions for mistrial made during the prosecutor's rebuttal argument deprived him of a fair trial. However, the record reveals that defendant only made two motions for mistrials. At the third place, although the trial court stated that defendant's motion for mistrial was denied, the record reflects that defendant merely lodged an objection to the prosecutor's remarks, and did not move for a mistrial.[7]
Defendant made one motion for mistrial on the grounds that the prosecutor improperly told the jury that defendant had an obligation to present a defense. Defendant does not indicate the specific language that is objectionable. However, defendant's complaint appears to be directed at the following excerpt of the prosecutor's closing argument.
(MR. WILLIAMS, the state's counsel):
Let's start with this. First off, do you know, Ladies and Gentlemen, what the defense is in this case? Could anyYou can't talk to me now obviously, but if I went down the line could any of you tell me what the defense is in this case? That he wasn't there, couldn't have done it, alibi that he was somewhere else, that it's a lessor (sic) charge thatThe defense in this case, Ladies and Gentlemen, *73 seems to me to be that since the police didn't take hair samples from here, or fingerprint that gun, that he's not guilty. That's what the defense seems to me, and that is not a defense. For him, you know, I was going to get up here and say what I usually say, which is we're trying a case; it gets exciting. We yell sometimes against each other, but we're friends. We y'all go home, we're going to be friends. We work together every day, but, you know, I don't think it's fair to anybody for him to say that he emptied out this and hair fell out of it; that's ridiculous. I don't think it was fair for him to tell you all what I attempted to introduce, and I was allowed to introduce, the clothing, that he didn't have time to check that clothing out. I don't think that's fair. I don't think that any of this is fair but that's his job, and I realize that. I guess, and I don't think my voice is going to rise to his level, but, maybe that's why he was yelling so loud. It's kind of likeI know you've allWhen you've dealt with foreign people that don't speak English, sometimes you think that if you don't talk louder they'll understand you. And you see people doing that a lot. But if you don't have anything to say, you know, talking louder isn't going to make it any clearer. And, Ladies and Gentlemen, the fact that he's been ranting and raving to you that don't throw his client away, all this nonsense about O.J. Simpson just further amplifies that there's no defense in this case.
Defendant's second motion for a mistrial was based on the grounds that the prosecutor improperly referred to the insanity defense, a defense that defendant had not raised.[8] Again, defendant has not specified the objectionable language in his brief. The following excerpt appears to contain the prosecutor's assertions about which defendant complains.
MR. WILLIAMS (the state's counsel):
Let me suggest to you, Ladies and Gentlemen, a couple of observations, you know if there has been an attempt to fingerprint this gun and say prints weren't lifted or there had been an attempt by the police to lift hair and send it to the crime lab for analysis and it was negative, you know what he would have said, he would have said, Ladies and Gentlemen, look what the police did. You got their own witness, Ms. LeBouef who came and positively identified my client and yet they must not have believed her, because they went and fingerprinted the gun and looked for hair in the hat. So, how could you believe her, and her identification, if the police didn't even believe it? That's what you would have heard if the gunIf they tried to get prints off the gun. You want to know what else you would have heard, let's just suppose, same facts in this case, that the police did go and they did find hair and they did find fingerprints and they belonged to Gene Winfrey. Let's look at what Mr. Somoza would have said. He would have said he's crazy, he was insane at the time of the offense.
The scope of closing argument must be limited to the evidence admitted, the lack of evidence, conclusions of fact therefrom and the law applicable to the case. The argument shall not appeal to prejudice. Furthermore, the state's rebuttal argument shall be confined to answering the argument of the defendant. La.C.Cr.P. art. 774.
When closing argument exceeds these limits, it may fall within the ambit of La. C.Cr.P. articles 770 and 771. State v. Perkins, 94-366 (La.App. 5th Cir. 2/15/95), 652 So.2d 21, 26. When a remark or comment is within the ambit of La.C.Cr.P. art. 770, a mistrial is mandatory unless the defendant only requests that the trial court admonish the jury.[9] La.C.Cr.P. art. 771 provides that *74 on request of defendant, the trial court shall admonish the jury to disregard the district attorney's remark that is irrelevant or immaterial and of such a nature that it might create prejudice against him in the mind of the jury. However, the trial court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure defendant a fair trial. La.C.Cr.P. art. 771; State v. Perkins, 652 So.2d at 26.
A mistrial is a drastic remedy and is within the discretion of the trial court, unless mandatory under La.C.Cr.P. art. 770. It is only warranted if substantial prejudice results which would deprive defendant of a fair trial. The trial judge is permitted great discretion to fashion an appropriate remedy when prejudicial conduct is not within La.C.Cr.P. art. 770. State v. Narcisse, 426 So.2d at 133. Furthermore, a conviction will not be reversed on the basis of allegedly prejudicial argument unless the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that the remarks contributed to the verdict. State v. Spencer, 93-571 (La.App. 5th Cir. 1/25/94), 631 So.2d 1363, 1369, writ denied, 94-0488 (La. 2/3/95), 649 So.2d 400.
In this case, the prosecutor's remarks relative to the defense put on by defendant were not prejudicial. The jury could easily have interpreted the remarks as a criticism of the defense tactics, but not necessarily that defendant was obligated to put on a defense. The prosecutor's remarks relative to what the defense might have done, the excitability of the two attorneys, their personal relationship and other comments not pertinent to the evidence were improper and unfortunate, but were harmless considering the evidence in this case. Likewise, the comments that the prosecutor made in rebuttal as to what defendant would have done "if" are also improper argument. However, they were not of the type which would require a mistrial under La.C.Cr.P. art. 770 and the record does not indicate that these particular remarks, in this particular case, influenced the jury or contributed to the verdict. In addition, the trial judge specifically instructed the jury that defendant did not have to present a defense. He also instructed the jury that the statements and arguments of counsel were not evidence. Thus, we find that the trial judge did not err in denying defendant's motions for mistrial.

ASSIGNMENT OF ERROR NUMBER SIX
In the sixth assignment of error, defendant contends that the trial court erred in allowing Sgt. William Vierra, of the Jefferson Parish Sheriff's Office, to testify about the pellets recovered from the gun. In this respect, defendant argues that the trial court erred in allowing the state's witness, Sgt. Vierra, to give improper lay opinion testimony concerning the type of ammunition recovered from the gun on the night of the robbery. Additionally, defendant argues that the testimony was irrelevant and prejudicial.
At trial, Sgt. Vierra, testified on direct examination that he recovered a loaded gun from beneath the driver's seat of the car which defendant was driving on the night of the robbery. Sgt. Vierra testified that the rounds from the gun were nine millimeter Winchester pellets, specifically "Talon pellets". In response to the prosecutor's question about the significance of these pellets, Sgt. Vierra stated that "[t]hese bullets are specifically made to try to penetrate armor." Defendant objected to the testimony as irrelevant and prejudicial. Defendant also objected to the testimony because the witness had not been qualified as an expert in ballistics. The trial court overruled defendant's objections.
The Louisiana Code of Evidence authorizes a witness who is not testifying as an expert to express opinion testimony under certain circumstances. A lay witness may express those opinions that are rationally based on the perception of the witness and are helpful to a clear understanding of the testimony or a fact at issue. La.C.E. art. 701. State v. Clayton, 570 So.2d 519, 525 (La.App. 5th Cir.1990).
*75 Unless otherwise provided by law, all relevant evidence is admissible at trial. La.C.E. art. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." La.C.E. art. 401. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or waste of time. La.C.E. art. 403. The determination concerning relevancy of evidence is within the discretion of the trial judge whose rulings will not be disturbed in the absence of an abuse of discretion. State v. Carter, 96-358 (La.App. 5th Cir. 11/26/96), 685 So.2d 346, 351.
Sgt. Vierra based his comment upon his personal knowledge and experience of twenty-two years as a crime scene investigator. Additionally, Sgt. Vierra's testimony regarding the bullets and their type was relevant to show that defendant was armed with a dangerous weapon, an element of the crime of armed robbery, La.R.S. 14:64. Also, the type of bullets was a fact of the case. Although the testimony may have been prejudicial because the type of bullets were armor piercing (Talon bullets), defendant has the burden of proving that the testimony of prejudicial relevant evidence should be excluded because its probative value is substantially outweighed by its prejudicial effect. We find that plaintiff did not bear his burden of proof in this regard.
If it was error to admit the evidence of the type of bullets, the Court must then consider whether it was harmless error, or not. This Court has applied a harmless error analysis to improperly admitted evidence. State v. Clayton, 570 So.2d 519 (La.App. 5th Cir.1990) and State v. DiLosa, 529 So.2d 14 (La.App. 5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989). In both of the above cases, this Court stated that the inquiry is "whether there is a reasonable possibility that the constitutional error complained of might have contributed to the defendant's conviction. The reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt." State v. Clayton, 570 So.2d at 526.
In this case, the evidence at trial was sufficient to establish defendant's guilt beyond a reasonable doubt. Therefore, any error occasioned by the admission of the type of bullets was harmless. State v. DiLosa, 529 So.2d at 26.

ASSIGNMENT OF ERROR NUMBER SEVEN
In this assignment of error, defendant asserts that the trial court erred in refusing to allow defendant to present his defense. Defendant combines several actions of the trial judge which he claims impaired his defense. First, the trial judge failed to permit evidence of ownership of the car he was driving. Second, the trial judge failed to continue the case. Third, counsel did not receive written notice, only verbal notice of the trial date. Fourth, the trial judge admitted into evidence prejudicial evidence regarding the switched license plate. Defendant's support for his claim is a general reference to La. Const. of 1974, Art. I, Sec. 16 and U.S. Const. Amend. 6.
Defendant first contends that the trial court denied his right to present a defense by excluding evidence regarding ownership of the car which defendant was driving on the night of the robbery. At trial, defense counsel asked Deputy Melancon on cross-examination whether the supplemental incident report reflected the registration of the vehicle. Deputy Melancon testified that the report that the vehicle was registered to "Ernest Lewis at 318 Willowdale Drive in Grey, Louisiana." On redirect, Deputy Melancon testified that the license plate was actually registered to a vehicle owned by "Susan Sidell". In the presentation of defendant's case, defendant attempted to offer a bill of sale and a certificate of title purporting to pertain to the vehicle which defendant was driving. The trial court sustained the prosecutor's hearsay objection to the documents. Defendant proffered these documents and argues that the trial court's exclusion of these documents as hearsay deprived defendant of his right to present a defense. However, *76 the resolution of this issue turns on the relevance of the excluded documents.
The Sixth Amendment of the U.S. Constitution and La. Const. Art. I, Sect. 16 guarantee an accused in a criminal prosecution the right to present a defense. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Hamilton, 441 So.2d 1192 (La.1983); State v. Carter, 570 So.2d 234, 236 (La.App. 5th Cir.1990).
As a general rule, hearsay evidence should be excluded. La.C.E. art. 802. However, if it is reliable, trustworthy, and relevant, and its exclusion would compromise the defendant's right to present a defense, normally inadmissable hearsay may be admitted. State v. Van Winkle, 94-0947 (La. 6/30/95), 658 So.2d 198, 202.[10] Nevertheless, the right to present a defense does not require a trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. State v. Carter, 685 So.2d at 346, 351.
Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." La. C.E. art. 401. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or waste of time. La.C.E. art. 403. The determination concerning relevancy of evidence is within the discretion of the trial judge whose rulings will not be disturbed in the absence of an abuse of discretion. State v. Carter, 685 So.2d at 351.
Here, the proffered documents fall under the hearsay exceptions as public documents. La.C.E. art. 803(8). However, the refusal to admit the documents is harmless because the information that the car belonged to someone other than defendant was brought out in the testimony of the deputy. Therefore, we find that although the trial court erred in excluding these documents, the error was harmless.
We have already addressed the merits of whether defendant was prejudiced by the trial judge's refusal to continue the trial. For the same reasons we also find no merit to the complaint regarding notice. Defendant also complains that the only reason that the prosecutor introduced evidence of the "switched license plate" was to prejudice defendant. This issue is encompassed in assignment number nine and will be addressed there. Thus, we find that the trial judge did not err and that he did not refuse defendant his defense.

ASSIGNMENT OF ERROR NUMBER EIGHT
Defendant next asserts that the trial court erred in denying defendant's motion for a new trial. Defendant moved for a new trial on the grounds that the verdict was contrary to the law and evidence and that his right to a fair trial was prejudiced because his trial counsel did not have sufficient time to prepare a defense. On appeal, defendant only raises the issue of inadequate time to prepare a defense. This issue has been fully discussed in assignment of error number one in which defendant specifically complains of the trial court's failure to grant his motions for continuance. Thus, we find that the trial judge did not err in denying the motion for new trial.

ASSIGNMENT OF ERROR NUMBER NINE
Defendant contends that the trial court erred in allowing the prosecutor to go beyond the scope of cross-examination in redirect. He argues that the trial court improperly permitted the district attorney to elicit testimony from Deputy Melancon on re-direct examination that was beyond the scope of cross-examination. Defendant also argues that the testimony was based on an inadmissible hearsay report.
*77 At trial, defense counsel objected on the grounds that the testimony was based on hearsay and that the prosecutor had elicited an answer by leading the witness. He did not lodge an objection based on re-direct testimony exceeding the scope of cross-examination. A new basis for an objection may not be raised for the first time on appeal. State v. Burdgess, 434 So.2d 1062, 1067 (La. 1983); State v. Hidalgo, 95-319 (La.App. 5th Cir. 1/17/96), 668 So.2d 1188, 1194-1195. Therefore, defendant's assignment of error is limited to the grounds of hearsay.
On cross examination, defense counsel asked Deputy Melancon whether the registration on the vehicle that defendant was driving had been checked. Defense counsel specifically asked the witness to refer to the supplemental incident report to answer the question. Deputy Melancon testified that according to the supplemental report, the vehicle was registered to "Ernest Lewis at 318 Willowdale Drive in Grey, Louisiana". Defense counsel further questioned Deputy Melancon as follows:
(MR. SOMOZA, defense counsel):
Q. What is thatdoes your supplemental report show this as the vehicle (DEPUTY ROBERT MELANCON):
A. If the license matches, yes the description fits the same.
Q. Okay. Look at that, I can't see the license plate, I think there is too much glare from the flash.
A. Yes I'm pretty sure it is the vehicle.
Q. You are pretty sure, and that is State's exhibit one. Now, let's go back to the scene, Jeanne's Tavern, for a moment. Are you finished with that report, have you refreshed your memory enough with that?
A. Well, I didn't have anything to do with writing that.[11]
On redirect examination, the district attorney questioned Deputy Melancon about the license plate that was on the rear of the car that defendant was driving on the night of the robbery, as follows:
BY MR. WILLIAMS (the state's counsel):
Q. Deputy, that is a copy of the report that you referred to during the cross examination by Mr. Somoza, is there information on the report regarding the license plate that was affixed to the rear of that car?
(DEPUTY ROBERT MELANCON):
A. Yes, there is.
Q. And what is that?
MR. SOMOZA: Objection, Your Honor. If he didn't prepare that report
MR. WILLIAMS: Judge, he opened the door, he used that report during his cross examination.
MR. SOMOZA:
Without objection, Your Honor. Without objection. I'm objecting, this officer did not prepare that report. He can't say what it is, and what it contains, and what it doesn't contain. Objection to hearsay.
MR. WILLIAMS:
Judge, he opened the door about the status of that car, and left it wide open.
THE COURT: Objection overruled.
MR. SOMOZA: Not the license, Your Honor, I never asked the question about the license plate.
THE COURT:
Objection overruled.
MR. SOMOZA: Note our objection for the record.
THE WITNESS: The report read 528, N, Nancy, 471.
BY MR. WILLIAMS:
Q. Is that the license plate number that was registered to Ernest Lewis, the registered owner of that car?
(DEPUTY ROBERT MELANCON):
A. Yes, sir, that is the way the report is filled out.
Q. In the body of the report at the bottom
MR. SOMOZA: *78 Same objection, Your Honor.
THE WITNESS:
That is what the report reads, yes, sir.
BY MR. WILLIAMS:
Q. Is there information that license plate is registered to a Susan Sidell?
MR. SOMOZA:
Objection, Your Honor. Now, that is leading.
THE WITNESS:
Right, that is what the report says.
MR. SOMOZA:
Your Honor, may we have a ruling on our objection?
THE COURT:
Objection overruled.[12]
La.C.E. arts. 801(A)(1) & 801(C) define hearsay as an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La.C.E. art. 802; State v. Soler, 636 So.2d at 1078. As a general rule, an investigative report prepared by police and other law enforcement personnel, is excluded from the public records and reports exception to the hearsay rule. La.C.E. art. 803(8)(b)(i).
Applying the above precepts, the report from which Detective Melancon testified was hearsay and inadmissible. However, the trial court did not err in allowing the testimony on re-direct. Defense counsel opened the door for the inadmissible hearsay report by questioning on cross-examination Deputy Melancon extensively from the report. "Where defense counsel went on cross-examination, the State had the right to follow on redirect." State v. Overton, 337 So.2d 1201, 1206 (La.1976). Because defendant opened the door through interrogation, the defense cannot now be heard to complain. State v. Rideau, 249 La. 1111, 193 So.2d 264, 269 (1966), cert. denied by Rideau v. Louisiana, 389 U.S. 861, 88 S.Ct. 113, 19 L.Ed.2d 128 (1967); State v. Pratt, 95-762 (La.App. 5th Cir. 2/27/96), 671 So.2d 21, 24.
In any event, any error occasioned by Deputy Melancon's testimony from the report was harmless. Inadmissible hearsay which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. State v. Pratt, 671 So.2d at 24. The witness' testimony regarding Ernest Lewis was merely cumulative of testimony elicited by defense counsel on cross-examination and any error was harmless.
Although not cumulative, Deputy Melancon's statement that the license plate on the vehicle was also registered to "Susan Sidell" was also harmless. The proper analysis for determining harmless error is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error". State v. Phillips, 94-673 (La.App. 5th Cir. 3/1/95), 659 So.2d 785, 792; Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Code, 627 So.2d 1373 (La. 1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
Considering that the admissible evidence presented at trial overwhelmingly established that the defendant was the person who robbed Samantha LeBouef while armed with a dangerous weapon, it is beyond doubt that the guilty verdict was unattributable to any erroneously admitted hearsay testimony. As such, any error regarding either statement was harmless.

ASSIGNMENT OF ERROR NUMBER TEN
In defendant's tenth assignment of error, he argues that the trial court erred in finding defendant to be an habitual offender. Defendant contends there was no showing that defendant was advised of his rights during the guilty plea for the prior offense.
On July 7, 1995, the state filed a bill of information alleging defendant to be a second felony offender in violation of 15:529.1, et *79 seq.[13] Defendant pled not guilty. However, defendant did not file a written response challenging the validity of his prior conviction on the basis of his prior plea of guilty on March 16, 1993 to violating La.R.S. 14:67. Therefore, the threshold question is whether defendant has preserved his complaint for review on appeal.
In 1993, the legislature enacted La.R.S. 15:529.1(D)(1)(b) to "establish the procedure to be followed to attack the validity of a prior conviction" and "to set forth burdens of proof. 1993 La.Acts 896. Article 15:529.1(D)(1)(b) provides as follows:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence. (Emphasis added).
In State v. Cossee, 95-2218 (La.App. 4th Cir. 7/24/96), 678 So.2d 72, 72, the Fourth Circuit considered the above provision and concluded that a defendant must file a written response to the habitual offender bill in order to preserve for appeal the issue of sufficiency of proof of the prior conviction based on a plea of guilty. State v. Cossee, 678 So.2d at 73.
However, in the interests of justice or judicial economy we will address the issue. See: State v. Cittadino, 628 So.2d 251, 254 (La.App. 5th Cir.1993).
As part of its habitual offender case, the state introduced the following two exhibits consisting of the following:
State Exhibit No. 1(S-1)the fingerprints taken of Mr. Winfrey that morning, January 5, 1995.
State Exhibit No. 2(S-2)a certified copy of the bill of information from Orleans Parish charging Gene V. Winfrey with a committing a theft of a motorcycle valued at five hundred dollars or more, (a violation of La.R.S. 14:67); a certified copy of defendant's fingerprints taken on March 16, 1993; two certified copies of the Docket Master in Orleans Parish indicating that Gene Winfrey pled guilty as charged through counsel (case number 362-129[14]); a certified copy of a guilty plea form for John Thomas (Gene Winfrey's co-defendant in the case number 362-129); a certified copy of the minute entry of March 16, 1993 reflecting that Gene Winfrey entered a plea of guilty; and a certified copy of the arrest register from Gene Winfrey's theft arrest.
In addition to offering these documents, the state called as a witness, Patricia Lusk (Lusk) of the Jefferson Parish Sheriff's Office. After being accepted as an expert in the field of fingerprint identification analysis, Lusk compared the fingerprints that she took of defendant that morning (S-1) with the fingerprints from the reverse side of the bill of information from case number 362-129(S-2) and concluded that the prints were made by the same person.
After the testimony of Lusk and the arguments of counsel, the trial judge found defendant to be a second felony offender and sentenced him to 100 years without benefit of parole, probation or suspension of sentence.
*80 Defendant contends that the evidence presented by the state at the habitual offender hearing was insufficient to prove that defendant was properly "Boykinized" in the predicate offense.
To prove that a defendant is an habitual offender, the state need only establish by competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Raymond, 97-81 (La.App. 5th Cir. 5/28/97), 695 So.2d 1039, 1044. In the wake of Parke v. Raley, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391,[15] the Louisiana Supreme Court adopted a new scheme for burdens of proof in habitual offender proceedings in State v. Shelton, 621 So.2d 769 (La.1993). This Court succinctly summarized that scheme in State v. Conrad, 94-232 (La.App. 5th Cir. 11/16/94), 646 So.2d 1062, 1064, writ denied, 94-3076 (La. 4/7/95), 652 So.2d 1345 as follows:
If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a "perfect" transcript of the Boykin[16] colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an "imperfect" transcript. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary. State v. Conrad, supra.

Here, the documents submitted by the state, specifically the minute entry and the Docket Master, dated March 16, 1993, contained in S-2, indicate defendant pled guilty to a felony theft charge and indicated that he was represented by counsel. According to the jurisprudential and statutory scheme cited above, the burden then shifted to defendant to affirmatively prove an infringement existed on his rights or a procedural irregularity occurred in the taking of the plea itself. State v. Conrad, 646 So.2d at 1064. Defendant did not object to the documents at the time that the state offered, filed and introduced them into evidence. After the defense rested its case, defense counsel argued that the state had not proven that defendant was advised of and waived his three "Boykin" rights in the predicate guilty plea. However, defendant introduced no evidence at any time that "affirmatively proved an infringement existed on his rights or a procedural irregularity occurred in the taking of the plea itself." State v. Conrad, 646 So.2d at 1064. Because defendant failed to introduce evidence that affirmatively proved an irregularity during the prior guilty plea or an infringement of his rights, defendant has not met his burden of proof. Id. Thus, we find that the trial judge did not err in adjudicating defendant an habitual offender.

ASSIGNMENT OF ERROR NUMBER ELEVEN
Defendant asserts that the trial court erred in imposing an excessive sentence. After defendant was sentenced as a second felony offender to serve 100 years at hard labor, without benefit of parole, probation, or suspension of sentence, defendant filed a timely motion to reconsider sentence. In *81 that motion and on appeal, defendant has contended that both the original and the current sentences were excessive. However, because defendant's original sentence of fifty years at hard labor was vacated, it is not subject to review on appeal. State v. Humphrey, 96-838 (La.App. 5th Cir. 4/29/97), 694 So.2d 1082, 1087.
On February 3, 1997, the trial court held an extensive hearing on the motion to reconsider sentence and took the matter under advisement. The record does not reflect a ruling on the motion for reconsideration. Rather than rule on the excessiveness issue while a motion for reconsideration is pending which may vacate the present sentence, we remand the case for a ruling on the motion and supplementation of the record with the results. If the motion to reconsider is granted and defendant is resentenced, he may appeal the new sentence. If the motion is denied or if it has already been ruled on, defendant must move to relodge this appeal within sixty days of the date of the ruling on the motion to reconsider sentence or the date of this opinion, whichever is later. This is in conformity with State v. Smith, 96-285 (La. App. 5th Cir. 10/1/96), 683 So.2d 826 and State v. Sanders, 618 So.2d 904 (La.App. 1st Cir. 1993).
Accordingly, defendant's conviction is hereby affirmed. The case is remanded for a ruling on the motion and supplementation of the record with the results. If the motion to reconsider is granted and defendant is resentenced, he may appeal the new sentence. If the motion is denied or if it has already been ruled on, defendant must move to relodge this appeal within sixty days of the date of the ruling on the motion to reconsider sentence or the date of this opinion, whichever is later.
CONVICTION AFFIRMED; CASE REMANDED.
NOTES
[1] Although the minute entry of June 16, 1995 reflects that the trial court heard a motion to suppress evidence, the record reflects that trial court heard a motion to suppress the identification.
[2] In his brief, defendant apparently is referring to the oral motion for continuance on June 16, 1995 in which his trial counsel mentioned being involved in two trials. However, the written motion for continuance indicates that trial counsel had been preparing for one other trial.
[3] La.C.Cr.P. art. 703(C) provides that a motion to suppress must be filed in accordance with La. C.Cr.P. art. 521, except under the following circumstances: when the defendant does not have the opportunity to file a timely motion to suppress, when neither he nor his counsel is aware of the grounds of the motion, or when the failure is otherwise excusable. According to La.C.Cr.P. art. 521, unless a different time is provided by law or the court sets a different time at arraignment, pretrial motions must be made or filed within fifteen days after arraignment.

We note that there is no written motion to suppress the identification filed in the record. Several motions were filed on February 16, 1995. The cover page of these motions indicates that a motion to suppress the identification was included in the group of filed motions. However, the record reflects that no motion to suppress the identification was filed. Nevertheless, apparently all parties, including the trial judge, believed that such a motion was filed because the court held a hearing on the motion on June 23, 1995, following which, he refused to suppress the identification.
[4] C.Cr.P. art. 723 is not applicable here.
[5] The record reflects the trial court did not rule on defendant's motions filed on February 16, 1995. The record also reveals that the trial court denied defendant's motion for discovery filed on June 22, 1995. Defendant has not raised these matters on appeal.
[6] Record page 207.
[7] Record, pages 311-312.
[8] Record, page 314.
[9] La.C.Cr.P. art. 770 provides that a mistrial is mandatory when the judge, district attorney, or court official makes a remark or comment within the hearing of the jury that refers directly or indirectly to: "(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury; (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; (3) The failure of the defendant to testify in his own defense; or (4) The refusal of the judge to direct a verdict."
[10] See also Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), in which the United States Supreme Court held that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice."
[11] Record pages 178-179.
[12] Record pages 185-186.
[13] Although the bill of information reflects that it was filed on July 17, 1995, the transcript of the multiple offender hearing reflects that state filed the bill of information on July 7, 1995.
[14] The state noted in its brief that the guilty plea form for John Thomas was inadvertently submitted instead of the plea form for Gene Winfrey.
[15] In that case, the United States Supreme Court considered a burden of proof scheme virtually identical to the one adopted by the Shelton Court and held that "the Due Process Clause permits a State to impose a burden of production on a recidivism defendant who challenges the validity of a prior conviction under Boykin." Parke, 506 U.S. at 34, 113 S.Ct. at 525-26.
[16] In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court set forth three federal constitutional rights that are waived by a guilty plea: (1) the privilege against self-incrimination; (2) the right to a trial by jury; and (3) the right to confront one's accusers.