831 So.2d 389 (2002)
STATE of Louisiana
v.
Susan ROBERTSON.
No. 02-KA-0373.
Court of Appeal of Louisiana, Fifth Circuit.
October 29, 2002.
*390 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Alan D. Alario II, Terry Boudreaux, Assistant District Attorneys, Gretna, LA, for Appellee.
Bertha M. Hillman, Thibodaux, LA, for Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant, Susan L. Robertson appeals her conviction of possession of cocaine. We affirm.
The Jefferson Parish District Attorney's office filed a bill of information charging Robertson with a violation of LSA-R.S. 40:967(C). Following her arraignment and plea of not guilty, the case was tried before a six-person jury which found her guilty as charged. The trial court sentenced Robertson to imprisonment at hard labor for two years and recommended a drug treatment program. Robertson filed a motion for appeal which was granted.

FACTS
The following facts were elicited at trial. Herman Lee Arrington, who was called as a witness by the State, testified that he lived approximately one block away from the Naughty Knight Lounge, at which he was a regular customer. He stated that he went to the bar on July 15, 2001 at approximately 1:00 p.m. Robertson was the bartender that day, and Mr. Arrington did not see any other employees in the bar. Approximately 15 or 20 minutes after Mr. Arrington arrived, a black man walked in and sat down next to Mr. Arrington. The black man had a conversation with Robertson, but Mr. Arrington was not paying *391 attention to what they were saying because he was watching television. When Mr. Arrington turned around, he noticed that both Robertson and the black man were gone. A few minutes later, Kim LaBruzza, the manager of the bar, walked into the bar and toward the office, which was located near the bathrooms. Mr. Arrington heard Ms. LaBruzza say, "Get the hell out of here."
Mr. Arrington turned toward the bathroom/office area and saw the black man run out of the ladies room and out the back door. Robertson went back behind the bar, grabbed a napkin, put crack cocaine in it, and tied it up. She handed it to Mr. Arrington and said, "Here, keep this for me." Mr. Arrington didn't take it and said, "Are you f ... ing crazy." Robertson turned around, twisted the napkin into a small ball and put it in the trash can behind her. While this was occurring, Ms. LaBruzza was on the telephone at the other end of the bar. Mr. Arrington testified that he knew it was crack cocaine, because he had been a recovering addict for two and one-half years and had smoked crack cocaine for six years. Therefore, he knew what crack cocaine looked like. Mr. Arrington testified that he had never been convicted of any crime, and that he had gone to rehabilitation on his own.
After Robertson put the napkin in the trash can, which was approximately 2-4 feet from where he was sitting, Ms. LaBruzza said, "Get the hell from behind my bar." Robertson then walked around the other end of the bar and sat down on a stool approximately four stools from Mr. Arrington. Mr. Arrington testified that when Robertson tried to give him the crack cocaine, she looked "a little stoned." He explained that he could tell she was using drugs because of her motions, actions, and the way her eyes looked, basing his opinion on his past experience as a drug user. He overheard a conversation between Ms. LaBruzza and Robertson; however, Robertson was not making sense. Mr. Arrington testified that Robertson's appearance and demeanor at that point were different when he first encountered her at approximately 1:00 p.m., at which time she seemed angry. After advising Ms. LaBruzza where Robertson had put the crack cocaine, he observed Ms. LaBruzza go to the trash can and retrieve the napkin and the drugs. It appeared to be the same napkin that Robertson had thrown into the trash can; however, it had been twisted into a small ball. He did not discuss the drugs with the police officer. Mr. Arrington identified State's Exhibit 1 as the napkin and crack cocaine retrieved from the trash. He testified that he liked Robertson, that she was a nice person, and that he did not have anything against her.
Kimberly D. LaBruzza, who was called as a witness by the State, testified that she was the manager of the Naughty Knight Lounge located at 34 Westbank Expressway in Gretna, and that her father-in-law owned the bar. Robertson worked part-time at the bar in emergency situations or if someone else could not work. On July 15, 2001, Ms. LaBruzza went to the bar at approximately 1:30 p.m. or 1:40 p.m. to change the register. Ms. LaBruzza testified that shift changes occurred at 2:00 p.m., 10:00 p.m., and 6:00 a.m., and that Robertson should have been bartending when Ms. LaBruzza went into the bar. When Ms. LaBruzza entered the bar, she did not see Robertson. There were no other employees inside the bar at that time.
Ms. LaBruzza went toward the bathroom and office area. She looked in the ladies bathroom and saw a black man with his back facing the door and Robertson was facing him, and it appeared to her that they were exchanging crack cocaine. At *392 first, Ms. LaBruzza told them to leave the bar and not come back, but then she told them, "Stay here, I'm going to call the cops." When Ms. LaBruzza got on the telephone, the black male ran out the back door. Robertson started to go behind the bar, but Ms. LaBruzza told her, "No, you're not going behind the bar. You sit on the other side and wait for the cops." Robertson sat down and waited. Ms. LaBruzza dialed 911 and told the operator that a drug deal had occurred in the bar in the bathroom between Robertson and a black male. Robertson, who was confused, told Ms. LaBruzza, "Wait until Kim gets here. She'll straighten everything up." Ms. LaBruzza testified that she was the only "Kim" who worked at the bar. Ms. LaBruzza further testified that defendant seemed "very, very loaded," her eyes were big, and she seemed not to know where she was.
The police officers arrived, and Ms. LaBruzza told them Robertson was the lady she found in the bathroom. The officer took Robertson outside and they talked. Mr. Arrington was at the bar at that time. Mr. Arrington told Ms. LaBruzza that Robertson had tried passing the drugs to him but he refused to take them, and suggested that she go behind the bar and look in the garbage can. When Ms. LaBruzza looked in the garbage can, she saw on the top a paper napkin twisted up. She untwisted it and saw what appeared to be a rock, which she brought to the police officer, and that State's Exhibit 1 was similar to the napkin and rock she saw there. She stated that she had nothing against Robertson.
At a later date, Robertson came into the bar to get her paycheck, and she and Ms. LaBruzza discussed what had occurred on July 15, 2001. Robertson told Ms. LaBruzza that she did not purchase drugs from a black man on that day, but had told "the blonde-headed lady" to get out of the bar. Ms. LaBruzza told her that there was no blonde-headed lady in the bar on that day, but that there was a black male in the bathroom with Robertson. Based on that conversation, Ms. LaBruzza concluded that Robertson was "totally out of it" on the day in question.
Louis Alvarez, who was called as a witness by the State, testified that he was a patrol officer with the Gretna Police Department. Officer Alvarez stated that, on July 15, 2001, at approximately 1:45 p.m., he received a call from the Naughty Knight Lounge. Based on the information given to him, Officer Alvarez canvassed the area for approximately five to seven minutes for a black male before going to the lounge. When he arrived at the bar, he spoke to Ms. LaBruzza and then to Robertson. Robertson told Officer Alvarez that she had been inside the bathroom with a black male, whose name was unknown to her, and that she had told him to leave the restroom and the bar. After Officer Alvarez spoke to Robertson, Ms. LaBruzza handed him a white paper napkin with three crack cocaine rocks inside. Officer Alvarez conducted a field test on one of the rocks which tested positive for crack cocaine. He identified State's Exhibit 1 as the crack cocaine he obtained that day from Ms. LaBruzza. Officer Alvarez placed Robertson under arrest and searched her. However, he found no drugs. He searched the bathroom but found no drugs, drug paraphernalia or contraband.
Daniel Waguespack, who was called as a witness by the State, was qualified as an expert in the fields of criminalistics and analysis of narcotic substances. He testified that he worked in the Jefferson Parish Sheriff's office crime laboratory as a forensic scientist and identified State's Exhibit 1 as a large envelope and a small envelope *393 stapled together. Inside the large envelope were two small rock-like substances inside a piece of tissue paper. Mr. Waguespack testified that he performed tests on the sample and concluded that the substance was cocaine. He did not test the sample contained in the small envelope, because it appeared the sample had been tested by someone else.
Robertson urges that the trial court erred in denying her motion for a mistrial based on improper prosecutorial comments during rebuttal argument. During closing argument, defense counsel argued that the State failed to introduce any evidence to prove beyond a reasonable doubt that Robertson possessed crack cocaine and claimed that the State was using "smoking mirrors [sic]." He argued, inter alia, that the State's witness, Mr. Arrington, lacked credibility. During rebuttal argument, the prosecutor stated as follows:
Smoking mirrors [sic]. I suggest to you that if anybody is trying to play the old hide the ball game, it's the Defense. Did anything of what Mr. Creech [defense counsel] just said to you all, number one, did it make any sense to you? What is supported by the evidence that you heard on the witness stand?
Number two, I'll give you a little hypothetical. Did anything he said to you insult you in any way? Let's talk about that.
Smoking mirrors [sic]. He has the nerve to stand up here and say the State of Louisiana is somehow trying to fool you, Ladies and Gentlemen of the Jury. He should be ashamed of himself.
At that point, defense counsel objected, stating that the prosecutor was using improper argument. The objection was trial judge overruled, and the prosecutor continued:
He should be ashamed of himself. Mr. Creech, hello, your client is the person on trial. Your client
Defense counsel objected again and asked to approach the bench. During the bench conference defense counsel objected to the prosecutor's tactics and moved for a mistrial. The trial judge refused to grant a mistrial. Defense counsel did not request an admonition.
Robertson argues that there was no evidence to support the prosecutor's remarks, and that they were outside the scope of rebuttal. She claims the prosecutor's statement indicated that the defense attorney was attempting to insult the jury and trying to trick them. She contends that she had no opportunity to respond to the prosecutor's allegations, and argues that the trial court erred in overruling her objections, that the remarks tainted the jury and contributed to the verdict, that her right to a fair trial was tainted and that the proper remedy was admonishment or mistrial. The State responds that although the prosecutor's comments could be construed as an ad hominem attack on the defense attorney, they fell within the scope of rebuttal.
LSA-C.Cr.P. art. 770 provides the law regarding mandatory mistrials:
Art. 770. Prejudicial remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;

*394 (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
LSA-C.Cr.P. art. 771 provides the law regarding discretionary mistrials and admonitions:
Art. 771. Admonition
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
The scope of closing argument must be limited to the evidence admitted, the lack of evidence, conclusions of fact therefrom and the law applicable to the case. The argument shall not appeal to prejudice. Furthermore, the state's rebuttal argument shall be confined to answering the argument of the defendant.[1]
A mistrial is a drastic remedy and is within the discretion of the trial court, unless mandatory under LSA-C.Cr.P. art. 770. It is only warranted if substantial prejudice results which would deprive defendant of a fair trial. The trial judge is permitted great discretion to fashion an appropriate remedy when prejudicial conduct is not within LSA-C.Cr.P. art. 770. State v. Narcisse, 426 So.2d at 133 [(La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983)]. Furthermore, a conviction will not be reversed on the basis of allegedly prejudicial argument unless the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that the remarks contributed to the verdict. State v. Spencer, 93-571 (La. App. 5th Cir.1/25/94), 631 So.2d 1363, 1369, writ denied, 94-0488 (La.2/3/95), 649 So.2d 400.[2]
This court has previously considered a case in which a defendant argued that the trial court erred in refusing to declare a mistrial when the prosecutor made certain remarks in his rebuttal argument which seemed to be statements of the prosecutor's personal opinion of defense attorneys rather than comments on the evidence.[3] That defendant lodged a continuing objection to these comments by the prosecutor, referring to defense tactics *395 as "cheap shots" and stating that a criminal defense attorney has "a defense for everything" even if their client had "been caught in the act."[4] This Court determined that these comments were outside the scope of proper rebuttal argument, which is confined to answering the argument of the defendant pursuant to LSA-C.Cr.P. art. 774. Nevertheless, we did not find that a mistrial was mandated because of the remarks and did not find, from a reading of the argument as a whole and considering the entirety of the record, that these statements so influenced the verdict as to require reversal.[5]
In the instant case, the comments made by the prosecutor do not fall under the provisions of LSA-C.Cr.P. art. 770 and thus, do not automatically warrant a mistrial. In addition, Robertson did not request an admonition following the comments at issue pursuant to LSA-C.Cr.P. art. 771. Nevertheless, we find that the comments made by the prosecutor about the defense attorney, particularly, "He should be ashamed of himself," were outside the scope of proper rebuttal argument under LSA-C.Cr.P. art. 774. However, we find that the remarks were only of such magnitude as to fall within La.C.Cr.P. art. 771, requiring an admonition if requested, and not within La.C.Cr.P. art. 770, requiring a mistrial. There is no indication in the record that these particular comments influenced the jury or contributed to the verdict. Although improper, considering the strong evidence in this case as delineated above, they were harmless.[6] In addition, we note that the trial judge instructed the jury that the statements and arguments of counsel were not evidence.
This assignment of error is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent[7], and none were found.
Accordingly, we affirm Robertson's conviction and sentence.
AFFIRMED.
NOTES
[1] La.C.Cr.P. art. 774.
[2] State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 74, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481.
[3] State v. Forrest, 95-31 (La.App. 5 Cir. 2/14/96), 670 So.2d 1263, writ denied, 96-0654 (La.6/28/96), 675 So.2d 1117.
[4] Id. at 1270.
[5] See also State v. Winfrey, supra; State v. Copeland, 93-544 (La.App. 5 Cir. 1/25/94), 631 So.2d 1223, writ denied, 94-0417 (La.5/20/94), 637 So.2d 477; State v. Paige, 556 So.2d 151 (La.App. 5 Cir.1990).
[6] See State v. Winfrey, supra.
[7] LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).