889 So.2d 1075 (2004)
STATE of Louisiana
v.
Jo E. COWDEN.
No. 2004-KA-707.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
*1078 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Andrea F. Long, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Salvador G. Longoria, Michele Gaudin, New Orleans, LA, for Defendant/Appellant.
*1079 Panel composed of Judges EDWARD A. DUFRESNE, Jr., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
On November 25, 2003, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jo E. Cowden, with third offense DWI in violation of LSA-R.S. 14:98(D). Defendant was arraigned on December 16, 2003 and pled not guilty. On February 5, 2004, the case was tried before a six-person jury which found defendant guilty as charged.
Defendant filed a combined motion for post-verdict judgment of acquittal and motion for new trial, which was denied on March 1, 2004. On that same date, the trial court sentenced defendant to imprisonment at hard labor for two years, suspended all but 30 days of that sentence, and imposed a fine of $2,000 with all but $750 suspended. The trial court also placed defendant on active probation for three years.[1] Defendant filed a motion for appeal that was granted.

FACTS
Andrew Claverie, age 20 at the time of the incident, testified that, on January 20, 2003, he and his father, also named Andrew Claverie, were performing service work on a pool behind a house on Central Avenue.[2] Although his father had parked his truck in front of the customer's house, part of it was blocking the neighbor's driveway. Claverie noticed that a woman was walking around next door, but he did not get a good look at her and would not be able to recognize her.
Claverie asked his father if he could move the truck because it was blocking the woman's driveway. Once he got permission, Claverie got into the truck and the woman approached. Claverie told her that he was going to move the truck, but she yelled at him and told him that "this is illegal" and "this is not right of him to do this." He assumed she was referring to the truck being in front of her driveway.
Claverie put the truck in reverse and backed it up. As he put the truck into park, he heard a noise. He thought that he had hit something, so he turned off the engine. As he got out of the truck, he heard the noise again. Claverie looked over the neighbor's fence and saw that the woman was in her vehicle spinning her tires, and the rear of the vehicle was scraping against her house.
Claverie looked over again and saw that the woman was backing her vehicle down the driveway. He testified that the woman stopped the vehicle right before the sidewalk at the end of her driveway and got out. She began yelling at Claverie again, so he walked into the backyard of the customer's house. The woman followed him.
Claverie testified that the woman started kicking the fence, so he asked the customer's son to go and get his father. He complied, and the owner of the house came outside. Claverie told his father, *1080 Andrew Claverie, Sr., what he had observed.
Thereafter, the police arrived. Claverie never spoke to a police officer regarding what he saw that day. Claverie testified that he did not give a statement to the officers, and that the signature on the statement shown to him at trial was not his, but looked like his father's. He stated that his father was 45 years old.
Jefferson Parish Sheriff's Officer K.K. Karanja testified that, on January 20, 2003, at approximately 3:19 p.m., he responded to a 911 call from 320 Central Avenue. He stated that another 911 call came in approximately one minute later from defendant at 316 Central Avenue. Defendant told the operator that her next door neighbor had hit her and "roughed her up."
When Officer Karanja arrived at 320 Central Avenue, the homeowner advised him that he was having a problem with his neighbor at 316 Central Avenue, and that she refused to get off his property. Officer Karanja saw a vehicle next door in the driveway of 316 Central Avenue and a person in the vehicle. He spoke to "Andy" who gave him information regarding what had transpired.
Officer Karanja went to the vehicle next door and observed that it was running. He told the woman, later identified as defendant, to turn off the vehicle and to step out, but got no response. Officer Karanja repeated his commands and then opened the door and told defendant to get out of the vehicle. She got out of the vehicle, but did not turn off the engine, so Officer Karanja turned off the engine and removed the keys.
Officer Karanja asked defendant some questions, but he did not understand most of her responses because she was slurring her words. Defendant told him she was having problems with her neighbor. He explained that defendant was using profanity and a loud tone of voice, and that her attitude was very aggressive and combative. Officer Karanja testified that, when defendant got out of the vehicle, she was staggering, had problems standing, and was balancing herself on the door of her vehicle. He explained that he thought defendant might be under the influence of alcohol and/or drugs because her eyes were extremely bloodshot, her speech was slurred and incoherent, and she had to hold on to the vehicle for balance.
Officer Karanja testified that he took a statement from Claverie's father who told him what Claverie had seen that day, but he did not indicate that the statement was being given to him by someone other than Claverie. Officer Karanja testified that it was his understanding when he arrested defendant that she had been driving down Central Avenue in reverse.
Jefferson Parish Sheriff's Officer Dominic Imbornone testified that he reported to 320 Central Avenue in response to a request by Officer Karanja for a traffic officer. He observed defendant, whom he positively identified in court, leaning on the back of a police car. Officer Imbornone suspected that defendant was under the influence of alcohol or drugs because she stuttered her words, could not speak "proper English," had bloodshot eyes, a strong odor of alcoholic beverage on her breath, and was unable to balance herself or walk without swaying.
He asked defendant to perform field sobriety tests, but she would not comply. Defendant was then arrested for DWI and reckless driving. Officer Imbornone testified that he asked defendant to sign an arrestee's form related to Miranda[3] rights and the Intoxilyzer test, but that she *1081 would not sign it. He stated that defendant was belligerent and refused to cooperate with the investigation.
At trial, Lieutenant Patricia Adams, a qualified expert in the field of taking and examining latent fingerprints, testified that she took defendant's fingerprints that day and compared them to fingerprints on a certified copy of a bill of information in case No. 350157 in the 22nd Judicial District Court charging defendant with second offense DWI that occurred on March 30, 2002. The State also introduced a minute entry pertaining to defendant's guilty plea to second offense DWI in case No. 350157 in the 22nd Judicial District Court. Lt. Adams testified that both sets of fingerprints were made by the same person, defendant.
The State then introduced into evidence: certified copies of minute entries, a bill of information charging defendant with DWI that occurred on November 11, 2001, a guilty plea form, and a copy of fingerprints in case No. F1402400 from First Parish Court in Jefferson Parish; a fingerprint card showing a date of arrest of November 11, 2001; and a copy of a suspect rap sheet showing a booking date of November 11, 2001. Lt. Adams testified that the fingerprints taken from defendant that day were made by the same person whose fingerprints were on the fingerprint card showing an arrest date of November 11, 2001.
Defendant did not call any witnesses.

DISCUSSION
On appeal, the defendant asserts nine assignments of error. When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, such as the erroneous admission of evidence, the reviewing court should first determine the sufficiency of the evidence by considering all of the evidence, including evidence the trial court may have erroneously admitted. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Accordingly, defendant's assignments of error numbers eight and nine will be addressed first, because they involve sufficiency of the evidence.
In assignment of error number eight, defendant argues that the trial court erred in denying her motion for judgment of acquittal, because the totality of the evidence was insufficient to support the verdict. In assignment of error number nine, defendant asserts that the State failed to meet its burden of proof, because Andy Claverie could not identify Jo Cowden as the driver. The State responds that the evidence was sufficient to support the conviction.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. State v. Lapell, 00-1056 (La.App. 5 Cir. 12/13/00), 777 So.2d 541, 545, writ denied, 01-0439 (La.1/4/02), 805 So.2d 1192.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of *1082 the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Defendant was convicted of third offense DWI, a violation of LSA-R.S. 14:98. At the time of the underlying offense, LSA-R.S. 14:98 provided, in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle ... when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.10 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or
(c) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.
In order to convict an accused of driving while intoxicated, the prosecution need only prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. State v. Bourgeois, 00-1585 (La.App. 5 Cir. 3/14/01), 785 So.2d 848, 853. To convict a defendant of driving while intoxicated, third offense, the State must also show that the defendant had two other valid convictions. LSA-R.S. 14:98(D). It is not necessary that a DWI conviction be based upon a breath or blood alcohol test; the observations of the arresting officer may be sufficient to establish the defendant's guilt. State v. Landry, 01-0784 (La.App. 4 Cir. 12/12/01), 804 So.2d 791, 794.
Intoxication with its attendant behavioral manifestations is an observable condition about which a witness may testify, and some behavioral signs, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. State v. Bourgeois, supra at 853. What behavioral manifestations are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. Id.
In the instant case, Andrew Claverie, Jr. testified that he observed a woman in a vehicle, spinning the tires in her driveway, scraping the vehicle up against her house, and then backing the vehicle down to the sidewalk. Both Officers Karanja and Imbornone testified that defendant exhibited signs of being under the influence of alcohol and/or drugs. Officer Karanja explained that defendant had bloodshot eyes, that her speech was slurred, and that she was staggering and could not keep her balance while standing. Officer Imbornone testified that he suspected defendant was under the influence of alcohol or drugs, because she stuttered her words, had bloodshot eyes, a strong odor of alcoholic beverage on her breath, and was unable to balance herself or walk without swaying. The testimony of Lieutenant Adams, along with the exhibits submitted by the State, established that defendant had two other valid DWI convictions.
With respect to identity, defendant is correct that Claverie could not identify her as the person who operated the vehicle. However, when combined with the other testimony elicited at trial, the jury could have reasonably inferred that defendant was the operator of the vehicle.
The evidence showed that defendant lived at 316 Central Avenue and that the Claveries were working at 320 Central Avenue. Claverie indicated that the woman at 316 Central Avenue got into her vehicle *1083 and backed down the driveway. Officer Karanja testified that a 911 call came in from 320 Central Avenue, and another 911 call came from 316 Central Avenue from a woman who told them that her next door neighbor had hit her. The homeowner at 320 Central Avenue told Officer Karanja upon his arrival that he was having a problem with his neighbor. When Officer Karanja walked next door to 316 Central Avenue to investigate, he discovered a woman, whom he positively identified in court as defendant, sitting in her vehicle with her hands on the steering wheel and with the engine running. When she exited the vehicle, he noticed signs of intoxication. After learning from Claverie's father that Claverie had seen her operating the vehicle, he arrested defendant for DWI.
It is not the function of the appellate court to second-guess the credibility determinations of the trier of fact or to re-weigh the evidence. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Carter, 98-24 (La. App. 5 Cir. 5/27/98), 712 So.2d 701, 708, writ denied, 98-1767 (La.11/6/98), 727 So.2d 444. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
Considering the testimony and evidence in this case, we find that the jury could have found beyond a reasonable doubt that the evidence was sufficient to support the conviction and that any reasonable probability of misidentification was negated. Accordingly, the trial court did not err in denying the motion for post-verdict judgment of acquittal based on those grounds.
In her first assignment of error, defendant contends that the trial court erred in prohibiting defense counsel from cross-examining the State's witnesses concerning proffered Defense Exhibits D-1, D-4, D-5, and D-6, and by repeatedly sustaining the prosecution's hearsay objection, which was legally erroneous. She contends that these exhibits were not hearsay, because the exhibits contained prior statements by the witness. Defendant also argues that these exhibits were admissible to attack the credibility of the witness, and they would have proven that she was arrested based on the false allegation that she was driving while intoxicated on Central Avenue.
The State responds that the exhibits were properly excluded by the trial court because they contained hearsay. Alternatively, the State argues that any error in the exclusion was harmless.
During the cross-examination of Andrew Claverie, Jr., defense counsel showed the witness Defense Exhibit D-1, a Jefferson Parish Sheriff's Office Voluntary Statement from Andy Claverie. He asked Claverie whether he had ever seen that statement before, and Claverie said he had not. When defense counsel asked Claverie to read the document to the jury, the State objected. The trial court sustained the objection based on improper foundation.
When questioning resumed, defense counsel asked Claverie whether it was his signature at the bottom of D-1, to which Claverie replied that it was not his, but that it looked like his father's. The State objected to any further questions regarding the matter. The trial court sustained the objection and told defense counsel that he could not cross-examine Claverie with something that was not his statement.
During the cross-examination of Officer Karanja, the officer identified his signature on D-1. When defense counsel began reading the document to the officer, the State objected based on hearsay. The trial court sustained the objection and told defense counsel that it was hearsay within hearsay. Defense counsel began reading *1084 the document again, and the State objected. The trial court sustained the objection and told defense counsel again that it was hearsay.
Defense counsel later showed Officer Karanja Defense Exhibit D-5, the arrest register. When defense counsel started reading from the document, the State objected, and the trial court sustained the objection based on hearsay. Defense counsel asked a question regarding the probable cause affidavit, Defense Exhibit D-6; however, the State objected based on hearsay, which the trial court sustained. The trial court added that every document defense counsel had referred to involved an out-of-court statement made by a declarant who was not on the stand and, therefore, the documents in question were inadmissible.
After the State rested its case, defense counsel proffered D-1, D-4, D-5, and D-6. Defense counsel said that she wanted to introduce the exhibits to show that the arrest was based on erroneous statements that defendant was driving down the street, as opposed to her driveway.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. LSA-C.E. art. 801(C). Hearsay evidence is not admissible except as specified in the Louisiana Code of Evidence or other legislation. LSA-C.E. art. 802; State v. Hartwell, 03-1214 (La.App. 5 Cir. 1/27/04), 866 So.2d 899, 905, writ denied, 04-0448 (La.6/25/04), 876 So.2d 832. Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454, 460 (La.1984); State v. Sarrio, 01-543 (La.App. 5 Cir. 11/27/01), 803 So.2d 212, 223, writ denied, 02-0358 (La.2/7/03), 836 So.2d 86.
In the instant case, Claverie testified at trial that he observed defendant backing her vehicle down the driveway and stopping right before the sidewalk at the end of her driveway. He further testified that he did not see defendant driving down the street. Defense counsel sought to impeach Claverie with D-1, his purported statement, which provided that Claverie observed defendant driving southbound on Central Avenue towards River Road. However, Claverie testified that he had never seen D-1 before, that the signature at the bottom of D-1 was not his, that the signature appeared to be that of his father, and that he never spoke to a police officer about what had occurred. Additionally, Officer Karanja corroborated this when he testified that he took the statement from Andrew Claverie, Sr., who relayed to him what his son, Andrew Claverie, Jr., had told him regarding the incident.
The trial court was correct in refusing to allow defense counsel to impeach Claverie with D-1, because the statements in D-1 were not made by Claverie, but by his father, Claverie, Sr. The trial court was also correct in preventing defense counsel from using the statement during the testimony of Officer Karanja. The statements made by Claverie, Sr. to the officer were hearsay, because they were made by someone other than the officer who was testifying at trial, and they were offered in evidence to prove the truth of the matter asserted, i.e., that Claverie told his father that defendant was driving down the street. Further, the statement is not a "business record" that is admissible under the business records exception to the hearsay rule, per LSA-C.E. art. 803(8)(b), as argued by defense counsel at trial.
With respect to the Louisiana Uniform DWI Arrest Report (D-4), the Arrest Register (D-5), and the Probable Cause Affidavit (D-6), those exhibits were prepared *1085 by Officer Imbornone, not Officer Karanja. Each of those documents contained hearsay that Claverie observed defendant spinning her tires in front of 320 Central Avenue and driving across her front yard.
We find that the trial court did not err in refusing to admit the proffered exhibits into evidence, in refusing to allow defense counsel to cross-examine the State's witnesses concerning these exhibits, or by repeatedly sustaining the prosecutor's hearsay objections. Furthermore, even if the trial court had erred by excluding the exhibits and the testimony related to them, it was harmless because the guilty verdict was clearly not attributable to such an error, but to the overwhelming evidence of defendant's guilt.
Additionally, we note that defendant was not prejudiced by the trial court's rulings on this issue, because defense counsel brought before the jury the information contained in these proffered exhibits. Officer Karanja testified that he took a statement from Claverie, Sr. who told him what Claverie had observed. He further testified that it was his understanding when he arrested defendant that she had been driving down Central Avenue. Thus, the jury heard the discrepancy between what Claverie, Sr. told the officer his son said, and what Claverie testified to at trial. The jury obviously concluded that Claverie's father misunderstood what his son said and relayed it incorrectly to the officer. Additionally, the State did not maintain at trial that defendant left her driveway in the vehicle.
In her second assignment of error, defendant asserts that the trial court erred in overruling a request for sequestration of witnesses during voir dire, allowing the most crucial witness, Andrew Claverie, Jr., to stay in the courtroom over defense counsel's objection. She claims that this error, coupled with the refusal to admit the proffered evidence and related cross-examination, deprived her of a fair trial. The State responds that defendant is precluded from raising this issue on appeal, because she did not lodge a contemporaneous objection to the alleged error at trial. Alternatively, the State argues that defendant cannot demonstrate prejudice in this matter and, therefore, she is not entitled to relief.
During voir dire, the following exchange occurred:
MS. GAUDIN [Defense counsel]:
Excuse me, Your Honor, a witness has just arrived and I'm not sure if there is a sequestration rule?
THE COURT:
Any problem with him being in the courtroom during voir dire?
MR. COX [The prosecutor]:
Judge, the trial hasn't started.
THE COURT:
I'm not going to exclude him unless you can give me a specific reason.
Ma'am, go ahead.
The record reflects that defense counsel did not move to sequester the witnesses; she only asked if there was a sequestration order. As such, defendant is not in a position to complain about what witnesses may have heard during the examination of prospective jurors. Additionally, she did not lodge a contemporaneous objection. In order to preserve the right to appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. LSA-C.Cr.P. art. 841.
Accordingly, because the defendant did not move for a sequestration of witnesses or lodge a contemporaneous objection, this issue is not properly before us on appeal. However, we note that a review of the record reveals that there *1086 were no specific facts or evidence mentioned during voir dire which may have affected the witness' testimony. Accordingly, we see no material prejudice suffered by defendant as a result of the witness' presence during voir dire.
In her third assignment of error, defendant asserts that the trial court erred in granting challenges for cause to the State even though the jurors had been rehabilitated and had all agreed to follow the court's instructions and the law, even if they disagreed with it. Specifically, defendant argues that the trial court erred in granting challenges for cause to the State in connection with jurors, Pernel Jones and Paul Powers. The State responds that the trial court did not abuse its discretion in granting the contested challenges for cause.
During voir dire, Pernell Jones stated that he was a self-employed carpenter, that he was single and had one child, and that he did not have any family in law enforcement. When asked whether he had ever been the victim of a crime, Jones responded that he had a "couple of DUI's" about five years ago, and that he had been convicted of them. The trial court advised Jones that it was his responsibility to judge the guilt or innocence of defendant based solely on the evidence at trial, and not on past incidents. Defendant indicated he understood and could do this.
Jones further stated that he had been on a jury before, that the defendant in that case was charged with murder, and that defendant was found guilty. Later during voir dire, the prosecutor asked Jones whether he would be a fair and impartial juror in this case, and Jones replied, "[n]o."
The prosecutor asked the trial judge to excuse Jones for cause because he had two DWI convictions and said he could not be fair. The trial judge granted the challenge, stating, "I think he cannot be fair and I think he's made that clear. I think it would be difficult for him to even if he wanted to."
During voir dire, Paul Powers stated that he did flooring work, was single, and had no children. He said that he had no family in law enforcement, that he had never been the victim of a crime, and that he had never been on a jury. When asked if any jurors had friends or relatives who had been arrested for DWI, Powers responded that he had friends and relatives who went to court for DWI and that their cases were still pending.
The prosecutor then asked Powers whether he would be able to be a fair and impartial juror in this case, considering that he had friends and relatives who were currently charged with DWI. Powers stated, "I wouldn't be able to be fair or nothing like that." The prosecutor also asked whether any jurors had friends or relatives who had been accused or convicted of a crime other than DWI. Powers answered that he had a brother who was incarcerated in Gretna at the present time, and that his case was pending.
Defense counsel questioned Powers regarding his brother. She asked Powers whether his brother's situation would affect his ability to sit in this case, and Powers replied, "I just, personally, myself, I don't feel comfortable." Powers said that he accepted that the judge was going to charge him with the law and that his job was to follow the law, even though he might be uncomfortable.
During the bench conference, the prosecutor challenged Powers for cause because he said that he could not be fair, that he had relatives and friends with DWI's pending, and that he had a brother who had charges pending. Defense counsel responded that Powers said he would follow the law. The trial judge said, "I did see that but I really didn't find him convincing. *1087 Although I wish I didn't have to, I'm going to grant that for cause." Defense counsel noted her objection.
A trial court is vested with broad discretion in ruling on challenges for cause, and the ruling of a trial court judge will be reversed only when a review of the entire voir dire reveals the judge abused his discretion. State v. Carmouche, 01-405 (La.5/14/02), 872 So.2d 1020, 1029. Although the trial judge has broad discretion, a challenge for cause should nevertheless be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. Id.
In the instant case, Jones, who had two DWI convictions, stated that he would not be a fair and impartial juror in this case, even after he told the trial judge that he could base his decision regarding defendant's guilt or innocence solely on the evidence at trial. Powers, who had friends and relatives with pending DWI charges and a brother in prison with a pending charge, stated that he would not be able to be fair or impartial, and that he did not feel comfortable sitting on this case. Although Powers later indicated he could follow the law, the trial judge found him unconvincing.
The trial judge had the benefit of observing the expressions and mannerisms and hearing the vocal intonations of both Jones and Powers, and found that they could not be fair and impartial jurors. Although both jurors indicated at some point during voir dire that they could be fair and impartial, the jurors' responses as a whole revealed facts from which bias, prejudice, or inability to render judgment according to law might be reasonably implied. As such, we find that the trial court did not abuse its discretion in granting the challenges for cause in connection with prospective jurors, Jones and Powers.
In her fourth assignment of error, defendant argues that the trial court erred in denying her motion for post-verdict judgment of acquittal, because the trial court gave an improper jury charge regarding the law of driving while intoxicated, stating to the jury that, "`[i]t is not necessary for completion of the offense for it to have occurred on a public street, highway, or other public property.'"
The State responds that neither LSA-R.S. 14:98 nor the jurisprudence limits prosecution of the offense to specific areas within the State, nor does it make a distinction for public versus private property. Therefore, the State contends that the trial court did not err in denying the motion for post-verdict judgment of acquittal based on that reason.
After closing arguments, a charge conference was held. The trial judge stated that defense counsel had told him off the record that she objected to the sentence in the jury charges that said, "`[i]t is not necessary for completion of the offense for it to have occurred on a public street, highway or other public property,'" and that she wanted it removed. The trial judge denied the request and noted counsel's objection, stating that it was a correct statement of the law.
Defendant was convicted of third offense DWI, a violation of LSA-R.S. 14:98. LSA-R.S. 14:98 does not include as an element of the crime that the offense must have occurred on public property, roads, or highways. Further, in State v. Landeche, 447 So.2d 1201 (La.App. 5 Cir.1984), this Court held that a person could be charged and convicted under LSA-R.S. 14:98, even if the operation of a motor vehicle was not on a public street or highway. Also, in State v. Smith, 93-1490 (La.App. 1 Cir. 6/24/94), 638 So.2d 1212, 1215, the appellate *1088 court stated that, "[t]he DWI statute does not limit the prohibition of driving while intoxicated to driving on state highways, and evidence of operating a vehicle while intoxicated, even in the ditch, constitutes evidence of the offense." The Landeche and Smith cases are similar to the instant case, because the vehicles were being operated in a parking lot and a ditch, respectively, not public streets or highways.
Based on the foregoing, we find that the trial court did not err by giving an improper jury charge or by denying the motion for post-verdict judgment of acquittal based on that reason.
In her fifth assignment of error, the defendant contends that the trial court erred by allowing Officer Imbornone to testify relative to the breathalyzer exam, as Louisiana R.S. 32:661 applies only to "public highways," and the trial court erred in refusing to grant the motion in limine on that issue. The State responds that the trial court did not err in refusing to grant the motion in limine as it was untimely, pursuant to LSA-C.Cr.P. art. 521, and the evidence was relevant and admissible. Alternatively, the State argues that any error in admitting the evidence was harmless.
On January 30, 2004, defendant filed a motion to quash or dismiss or in the alternative, a motion in limine. In that motion, defendant argued that evidence of the breath test or alleged refusal to take the breath test was inadmissible under LSA-R.S. 32:661 because the offense occurred on private property. On February 5, 2004, the morning of trial, the following exchange occurred relative to the motion:
THE COURT:
Secondly, you move to exclude from evidence any chemical, any evidence with regard to chemical tests. First of all, I'm going to deny your motion. It is untimely. Secondly, though, on the merits, so that you will know what I intend to rule, I don't know whether there is going to be a rule needed because my recollection is that the state doesn't have the chemical test. Is that right Mr. Cox?
MR. COX:
That is correct, Your Honor.
THE COURT:
Your most compelling argument is in part two of your memo which I think I've made known to you, I thought, was where you refer to Title 32 in Section 661 and quoted saying that "Tests may only be administered when an officer has reasonable ground to believe that the person has been driving in actual physical control of a motor vehicle on public highways under the influence of alcoholic beverages." Again, like I said, I'm not making a ruling on what I would do if the state offered a test, but as far as I know, they are not offering one.
MR. LONGORIA:
May I interrupt?
THE COURT:
No.
MR. LONGORIA:
For the record, Your Honor?
THE COURT:
No. There's no more need for it Mr. Longoria. I already told you your motion in limine is untimely and that's why I don't set motions on the morning of trial because you get into longwinded motions and arguments and then you don't get the trial underway.
MR. LONGORIA:
Note our objection for the record, Your Honor, on ruling on motion to quash, motion to dismiss and motion in limine.
THE COURT:
They're noted.

*1089 Bring in the jury.
LSA-C.Cr.P. art. 521 sets forth as follows:
Pretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.
Defendant did not file the motion in question within 15 days after her arraignment, nor did she file a motion showing good cause why she should have been allowed to file the motion untimely, as mandated by LSA-C.Cr.P. art. 521. As such, the trial court did not err in denying the motion as being untimely.
Further, although Officer Imbornone's testimony relative to the defendant's refusal to take the breathalyzer exam was erroneously admitted, it was harmless. The State introduced strong evidence establishing defendant's guilt, and the testimony regarding defendant's refusal to take the breathalyzer test clearly did not contribute to the verdict.
In her sixth assignment of error, defendant asserts that the trial court erred in repeatedly threatening defense counsel with contempt, incarceration, and other punitive measures in front of the jury and at bench conferences, all of which undermined the defendant's right to a fair trial. The State responds that the issue is precluded from review on appeal, because defendant failed to make any contemporaneous objection at the time of the contested statements. Alternatively, the State argues that the trial judge acted in an appropriate manner within the bounds of his authority as presiding judge.
During voir dire, defense counsel asked the prospective jurors whether they were going to make the State prove that defendant was driving her car while intoxicated in this case. The State objected to the question, saying that it was a misstatement of the law. The following bench conference was then held out of the hearing of the jury:
THE COURT:
What's your objection?
MR. COX [The prosecutor]:
The objection is she stands before the jury and acts like she's driving and she says driving a vehicle. It's operation. It's not driving.
THE COURT:
What do you say about that Ms. Gaudin?
MS. GAUDIN [Defense counsel]:
I say the charge is DWI. "D" stands for driving.
THE COURT:
He's actually right. Don't make any motions to show that sort of thing. I wish  I have to admit what he said was true. You are painfully close to dealing with the facts of the case. Although you didn't get there, you didn't get quite that close. You don't need to say anything, all right? Stay away from the facts and don't motion. I think that the point of Mr. Cox's objection is that no matter whether you said it or motioned it, you are implying something that is not an element or that distorts what the elements are. Is that what your point is Mr. Cox?
MR. COX:
Yes.
MR. LONGORIA [Defense counsel]:
Is this on the record?
THE COURT:
Yes, it is.

*1090 MR. LONGORIA:
Okay. Because I'd like to say something, too.
THE COURT:
No. We're going to do one at a time. We don't have two counsel arguing. It's her turn, she 
MR. LONGORIA:
Your Honor, it's 
THE COURT:
Sit down, Mr. Longoria. I'm not going to argue with you. Sit down and don't come back up here. Now.
MR. LONGORIA:
I apologize, Judge.
THE COURT:
One more time, sit down or you're going to be removed for the remainder of the trial.
(COUNSEL RETURNS TO HIS SEAT)
You can tell Sal [defense counsel] that I am not going to have him argue with me every time I make a ruling.
MS. GAUDIN:
I will, Your Honor.
THE COURT:
Every time he's in this Court and in motion, he argues. One more time, he's out for good.
MS. GAUDIN:
I will, Your Honor.
Defendant did not lodge contemporaneous objections to the comments she complains of on appeal. Accordingly, this issue is not properly before us on appeal. However, we note that even if defendant had lodged a contemporaneous objection, the trial judge's comments were not comments on the evidence and the trial judge did not give an opinion as to defendant's guilt or innocence. Further, the record does not show that the jury overheard either the substance of the discussions or the purported tone of the exchanges.
Defendant also contends that the trial judge threatened defense counsel in front of the jury at the bench conference during Officer Karanja's cross-examination. He claims that, although the comments occurred off-the-record, they were clearly loud enough for the jury to hear them. Because the alleged comments were made off-the-record, there is nothing in the record for this court to review. There is also nothing in the record that indicates the comments were loud enough for the jury to hear.
In light of the foregoing, we find that the trial court's comments did not undermine defendant's right to a fair trial, nor did they constitute reversible error.
In her seventh assignment of error, defendant asserts that the trial court erred in denying her motion for mistrial after the prosecution argued in its closing well beyond the evidence admitted, appealing to prejudice. The State responds that the comments were proper and that a mistrial was not warranted because it was addressing arguments the defense made in closing argument.
The exchange at issue is as follows:
MR. COX:
Because but for the fact that the Claverie's pool truck was blocking her driveway, she would have been putting peoples lives in danger. She would have gotten out there and put your lives, your children's lives 
MS. GAUDIN:
I really have to object.
THE COURT:
Sustained.
After the State completed its rebuttal argument, the following exchange occurred:
MS. GAUDIN:

*1091 The prosecutor just made an argument that was completely inappropriate which was, but for the pool truck, Ms. Cowden was headed on the road to kill people, which has injected a whole new level of invective without proof and I'm asking for a mistrial.
THE COURT:
Denied.
MS. GAUDIN:
Okay.
THE COURT:
I don't think he did anything that prejudiced the jury and besides Mr. Longoria has repeatedly argued and got things into evidence or got things before the jury that I already ruled on. I don't know how many times I heard references to how it was on private property and so forth. Time after time after time, you cannot seriously be complaining about Mr. Cox's remark that was in my opinion inadmissible but certainly did not rise to the level of a mistrial. You were scarcely out of your chair before I sustained your objection. I saw you standing and before you got a word out, I said sustained.
MS. GAUDIN:
Well 
THE COURT:
And so, I can't see where he really did any damage that would justify a mistrial so I'm not going to grant it.
MS. GAUDIN:
Okay.
The decision to grant or deny a mistrial is within the sound discretion of the trial court. The denial of a motion for a mistrial will not be reversed on appeal unless the court has abused its discretion. State v. Ratcliff, 98-101 (La.App. 5 Cir. 2/23/99), 731 So.2d 356, 363, writ denied, 99-1112 (La.9/3/99), 747 So.2d 541. Mistrial is a drastic remedy and is warranted only where remarks result in substantial prejudice sufficient to deprive defendant of a fair trial. State v. Overton, 618 So.2d 439, 441 (La.App. 5 Cir.1993).
LSA-C.Cr.P. art. 774 provides the scope of closing argument as follows:
The argument shall be confined to evidence admitted, to lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
A prosecutor has considerable latitude in making closing arguments. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, 374, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). A conviction will not be reversed because of improper argument, unless the reviewing court is" `firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict.'" Id. at 375.
In the instant case, the prosecutor's comments about defendant, particularly regarding putting the lives of the jurors and their children at risk, were outside the scope of proper rebuttal argument under LSA-C.Cr.P. art. 774, and the trial judge properly sustained the objection. However, the comments made by the prosecutor do not fall under the provisions of LSA-C.Cr.P. art. 770 that automatically warrant a mistrial. The remarks were only of such magnitude as to fall within LSA-C.Cr.P. art. 771, which requires an admonition if requested. Defense counsel did not request an admonition.
Additionally, there is no indication in the record that these particular comments influenced the jury or contributed to the verdict. Although improper, considering the strong evidence in this case, they were *1092 harmless. See State v. Robertson, 02-373 (La.App. 5 Cir. 10/29/02), 831 So.2d 389, 395. Further, it is noted that the trial judge instructed the jury that the statements and arguments of counsel were not evidence.
Based on the foregoing, we find that the trial court did not err in denying defendant's motion for mistrial.
Defendant also contends that defense counsel was not allowed to argue during closing that she should not be found guilty of driving while intoxicated for only being in her driveway, and that the jury was told to disregard the comments.
However, we find that the trial court did not err by, in effect, sustaining the objection, and admonishing the jury to disregard defense counsel's comment, because he was simply preventing defense counsel from quoting the wrong law, as discussed in assignment of error number four.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following errors require corrective action.
First, the trial judge did not advise defendant of the two-year prescriptive period for filing post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. Therefore, we remand and order the trial court to inform defendant of this prescriptive period by sending written notice to defendant within ten days after the rendition of the appellate opinion and to file written proof in the record that defendant received such notice. State v. Miller, 02-729 (La.App. 5 Cir. 12/30/02), 836 So.2d 614, 618, writs denied, 03-0200 (La.10/10/03), 855 So.2d 326, and 03-0503 (La.10/10/03), 855 So.2d 329.
Second, according to the transcript, the trial judge sentenced defendant to two years at hard labor and suspended "all but 30 days of that sentence." The commitment states, "[s]entence is suspended," but does not indicate that 30 days of the sentence was not suspended and must be served. Accordingly, we order the trial court to correct the commitment to reflect that 30 days of defendant's sentence was not suspended.
Third, the trial judge failed to specify the conditions of home incarceration, as required by LSA-R.S. 14:98(D)(3)(a), at the time of sentencing. The record does not reflect whether the trial judge gave defendant a certificate setting forth the conditions of her home incarceration.
In State v. Parent, 01-50 (La.App. 5 Cir. 5/30/01), 788 So.2d 685, 690, defendant was convicted of theft. Part of defendant's sentence included home incarceration pursuant to LSA-C.Cr.P. art. 894.2. However, according to the record, the trial judge failed to specify the conditions of home incarceration at the time of sentencing or give defendant a certificate setting forth the conditions of her home incarceration. Thus, this Court affirmed defendant's conviction and sentence, and remanded the matter to the trial court to hold a hearing regarding the conditions of defendant's home incarceration within ten days and to file written proof in the record that this requirement was met.
Accordingly, as was done in Parent, we remand this case to the trial court and order it to hold a hearing within ten days of this opinion regarding the conditions of defendant's home incarceration, in order to comply with the provisions of LSA-C.Cr.P. art. 894.2 and R.S. 14:98(D)(3)(a). We further order the trial court to file written proof in the record indicating that this hearing was held and that defendant's conditions of home incarceration have been specified.

*1093 DECREE

For the reasons set forth above, we affirm defendant's conviction and sentence. However, we remand the case and order the trial court to inform defendant of the two-year prescriptive period by sending her written notice within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. Further, we order the trial court to correct the commitment to reflect that 30 days of defendant's sentence was not suspended. Finally, we order the trial court to hold a hearing within ten days of this opinion regarding the conditions of defendant's home incarceration and to file written proof in the record indicating that this hearing was held and that defendant's conditions of home incarceration have been specified.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The trial court imposed special conditions of probation as follows:

(1) one year and eleven months of home incarceration;
(2) enter and complete a four to six week in-patient substance abuse program;
(3) enter and complete an out-patient substance abuse and driver's improvement program;
(4) vehicle seized unless an exemption can be shown.
[2] The younger Claverie will be referred to as "Claverie," and his father will be referred to as "Claverie, Sr."
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).