963 So.2d 1023 (2007)
STATE of Louisiana
v.
John J. KESTLE.
No. 07-KA-49.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 2007.
*1024 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Megan L. Gorman, Laura Schneidau, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
John Hall Thomas, Karla M. Baker, Regan & Associates, P.L.C., New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS, and FREDERICKA HOMBERG WICKER.
MARION F. EDWARDS, Judge.
Defendant/appellant, John J. Kestle ("Kestle"), appeals his conviction as a third offender under LSA-R.S. 14:98(D), operating a vehicle while intoxicated. Because we find that the evidence at trial was insufficient to prove that Kestle was intoxicated under that statute, we reverse his conviction.
Kestle was charged in a bill of information with third offense driving while intoxicated (DWI) and pled not guilty. Following a bench trial, Kestle was found guilty as charged and sentenced to two and one half years at hard labor. All but thirty days of the sentence was suspended, and Kestle was ordered to serve the balance of the sentence on home incarceration under active probation.
At trial, the parties stipulated that Kestle had two previous DWI convictions and that Kestle's intoxilyzer test results showed he had .000 blood alcohol on the date of the incident. The only testimony at trial was that of the arresting officer, Trooper Wayne Coates ("Trooper Coates") of the Louisiana State Police. At approximately *1025 7:35 p.m. on October 12, 2004, Trooper Coates was dispatched to an accident in Metairie on the I-10 eastbound at Bonnabel. When he arrived, he saw a truck on the side of the road at the foot of the Bonnabel overpass with its left front tire deflated. Trooper Coates approached the vehicle to speak to the driver, Kestle, who was sitting behind the wheel of the car, when he noticed the driver appeared intoxicated. Trooper Coates advised Kestle of his Miranda rights and questioned him about the crash. Kestle stated that an unknown vehicle swerved into his lane, causing him to strike the bridge railing. Trooper Coates asked Kestle to exit the vehicle. According to Trooper Coates, Kestle appeared to be extremely impaired. He noted that Kestle's speech was very slurred and that he was unsteady on his feet and had to maintain his balance by keeping contact with the car. Although Trooper Coates did not detect an alcohol smell or any indication of alcohol use, he proceeded to conduct a field sobriety test, believing Kestle was impaired on narcotics. Kestle's pupils were constricted and he was not in control of his bodily movements. The field test revealed that Kestle did not have nystagmus, which indicated he did not have blood alcohol in his system, although Kestle had admitted to having had three beers. He denied having taken narcotics. Kestle performed very poorly on the walk and turn test and the one-leg stand test. Trooper Coates testified Kestle could not follow directions even though he repeated them several times. Kestle could not maintain his balance during the tests and, at one point, fell to where his hands touched the pavement.
According to Trooper Coates, Kestle claimed he had disc problems that prevented him from performing the one-leg stand test and indicated that his shoes, which were sandals/flip flops, prevented him from adequately performing the walk and turn test because the ground consisted of gravel. Kestle denied taking any medication within the past twenty-four hours and indicated he had worked a ten-hour day. Trooper Coates discounted all these explanations, stating they did not explain Kestle's poor performance on the field sobriety test.
The entire field test was captured on videotape which was entered into evidence. Trooper Coates testified that Kestle's performance on the field test and his behavior during the entire investigation indicated some form of intoxication and classified his level of impairment as extreme. The trooper did not search Kestle's vehicle.
Kestle was subsequently taken to the Jefferson Parish East Bank Lockup where a breathalyzer was administered. He blew .000, which indicated there was no blood alcohol in his system. Kestle declined a urine test that was requested by Trooper Coates. Trooper Coates did not ask him to submit to a blood test. Kestle was subsequently charged with reckless operation and driving while intoxicated. In Trooper Coates' opinion, Kestle was under the influence of some narcotic.
On appeal, Kestle argues that the evidence was insufficient to convict him of third offense DWI because the State failed to prove he was under the influence of a scheduled narcotic, a key element of LSA-R.S. 14:98(A)(1)(c). Kestle asserts the arresting officer was not certified to determine whether he was under the influence of a narcotic and was not certified to articulate what type of narcotic under which he believed Kestle to be impaired. Kestle contends the State failed to exclude every reasonable hypothesis of innocence for his behavior such as his fatigue, his back injury, and/or the conditions surrounding the field sobriety tests.
*1026 The constitutional standard for evaluating the sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find that the State proved the essential elements of the crime beyond a reasonable doubt.[1] When circumstantial evidence is used to prove the commission of an offense, LSA-R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction.[2]
In assessing other possible hypotheses in circumstantial evidence cases, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Instead, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under the Jackson standard.[3]
LSA-R.S. 14:98 provides, in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle . . . when:
(a) The operator is under the influence of alcoholic beverages; or
. . . .
(c) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964; or
(d)(i) The operator is under the influence of a combination of alcohol and one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.
. . . .
(e) The operator is under the influence of one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription and the influence is caused by the operator knowingly consuming quantities of the drug or drugs which substantially exceed the dosage prescribed by the physician or the dosage recommended by the manufacturer of the drug.
In order to convict an accused of driving while intoxicated, the prosecution must prove that the defendant was operating a vehicle and was under the influence of alcohol or drugs.[4] To convict a defendant of third offense driving while intoxicated, the State must also show that the defendant had two other valid convictions. LSA-R.S. 14:98(D). In the present case, there was no dispute that Kestle was operating a vehicle or that he had two prior DWI convictions. Because of the stipulations prior to trial, the State only needed to prove that Kestle was under the influence of drugs. With no evidence that Kestle consumed a drug obtainable with or without a prescription under section (e), the State necessarily proceeded under section (c).

*1027 [T]he terms "intoxicated" and "under the influence of alcoholic beverages" have a certain and well-understood meaning, i.e., a person is intoxicated within the provisions of the statute when he does not have the normal use of his physical and mental faculties by reason of the use of alcoholic beverages (or narcotics), thus rendering such person incapable of operating an automobile in a manner in which an ordinary prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions.[5]
Intoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify.[6] It is not necessary that a DWI conviction be based upon a breath or blood alcohol test; the observations of the arresting officer may be sufficient to establish the defendant's guilt.[7] The vast majority of the cases under LSA-R.S. 14:98 involve intoxication by alcohol. In each of them, in addition to the behavior of the defendant, the arresting officers observed the odor of alcohol and most of the defendants admitted to having consumed alcohol and some had alcoholic beverages or bottles in the vehicles.
Here, Trooper Coates was the sole witness against Kestle. Trooper Coates testified he could tell if a person was on a narcotic based on his experience as a police officer of approximately fifteen years, of which four were with the Jefferson Parish Sheriff's Office Street Crimes Division. There he was involved with narcotics arrests. Concerning Kestle, Trooper Coates noted the lack of an alcoholic odor and Kestle's constricted pupils and found that Kestle's behavior was consistent with his observation of people on narcotics. However, Trooper Coates stated he did not have any formal training in detecting the difference between alcohol and drug impairment, apparently known as "DRE" training. He testified the horizontal gaze nystagmus (HGN) test could detect drug intoxication if the administrator was DRE certified, which he was not. He explained he would have to go to a school to get certified and then maintain his certification. Trooper Coates' certification was limited to the field sobriety tests, which detects general intoxication, and the intoxilyzer, which is specific to alcohol intoxication.
Even in cases involving narcotic intoxication, failure to pass a field sobriety test has been held by this Court to be sufficient evidence to support a conviction of driving while intoxicated.[8] An officer's "subjective" opinion determines whether a suspect has passed the "objective" field sobriety test.[9] The defendant admitted she had taken pain medication and pill bottles containing Vicodin and Soma were found in her car. In concluding there was sufficient evidence of drug intoxication, this Court considered the defendant's failure of the field sobriety test, her glassy and dilated eyes, her admission of taking pain medications, and the pill bottles found in the car.
*1028 Although Kestle's failure to submit to a urine test does not automatically establish that he was under the influence of drugs, the weight of the refusal is left to the trier of fact.[10] We find that Kestle's refusal to submit to the chemical test, coupled with his failure of the field sobriety tests, could have led a rational trier of fact to conclude he was under the influence of a substance.
The key issue in this case is whether the State proved Kestle's behavior or intoxication was caused by a drug specified in the statute. Controlled dangerous substances referred to in LSA-R.S. 14:98(C) are expressly enumerated in R.S. 40:964. These include several references to narcotic drugs. In the present case, Trooper Coates admitted that he could never testify as to the type of narcotic which Kestle may have ingested and that that is the purpose of the chemical test. R.S. 14:98(A)(1)(c) requires proof of intoxication by a specific scheduled drug. Certain behaviors and a distinctive odor make alcohol intoxication readily observable by the average person. The same cannot be said of most drugs. The opinion of an officer regarding whether a person is under the influence of certain drugs is circumstantial evidence that may be considered sufficient, provided that the officer has the relevant skills, experience, or training to render such an opinion. Here, while Trooper Coates had some experience with persons on narcotics, he was not trained or qualified as an expert in narcotic detection.
Kestle denied having taken any drugs, and no search of his car was made. There is no notation in the record that any search of his person revealed the presence of drugs, pills, bottles, or any drug paraphernalia. Under all the circumstances presented here, we are unable to conclude that Trooper Coates' identification of the intoxicating substance as a narcotic, without more, was sufficient under the statute to support a conviction.
For the foregoing reasons, the conviction is reversed.
REVERSED.
NOTES
[1] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
[2] State v. Johnson, 05-425 (La.App. 5 Cir. 12/27/05), 920 So.2d 878, 880.
[3] Id.
[4] State v. Cowden, 04-707 (La.App. 5 Cir. 11/30/04), 889 So.2d 1075, 1082, writ denied, 04-3201 (La.4/8/05), 899 So.2d 2.
[5] State v. Hightower, 238 La. 876, 116 So.2d 699, 703 (1959).
[6] State v. Johnson 05-425 (La.App. 5 Cir. 12/27/05), 920 So.2d 878, 881, writ not considered, XXXX-XXXX (La.10/13/06), 939 So.2d 354.
[7] State v. Conner, 02-363 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 402, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.
[8] State v. Richoux, 98-374 (La.App. 5 Cir. 5/26/98), 714 So.2d 241.
[9] Id.
[10] See, State v. Washington, 498 So.2d 136, 138 (La.App. 5 Cir.1986).